## Case No. 13,784.

### TAYLOR et al. v. CARPENTER.

[3 Story, 458; 7 Law Rep. 437; 2 West. Law J. 187; Cox, Manual Trade-Mark Cas. 14, 41; Cox, Am. Trade-Mark Cas. 14.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1844.

TRADE MARKS—ALIENS—EQUITABLE RELIEF.

1. Where the plaintiffs were manufacturers, in England, of "Taylor's Persian Thread,"—and the defendants, in America, imitated their names, trade marks, envelopes, and labels, and placed them on thread of a different manufacture; it was *held*, that it was a fraudulent infringement by the defendants of the right of the plaintiff, for which equity would grant relief; whether other persons had, or had not done the same.

[Cited in Perkins v. Currier, Case No. 10,985; Cuervo v. Jacob Henkell Co., 50 Fed. 472; Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 145.]

[Cited in Julian v. Hoosier Drill Co., 78 Ind. 414; Gilman v. Hunnewell, 122 Mass. 151; Connell v. Reed, 128 Mass. 477. Cited in brief in Caswell v. Davis, 58 N. Y. 225.]

2. In the courts of the United States, alien friends are entitled to claim the same protection of their rights, as citizens.

[Cited in U. S. v. Wong Dep Ken, 57 Fed. 212.]

[Cited in Derringer v. Plate, 29 Cal. 296.]

Bill in equity [by John Taylor and others against Daniel Carpenter] for an injunction and other relief. The bill in substance stated: "That the plaintiffs are subjects of the queen of Great Britain, and for many years past have been very extensively engaged in manufacturing and selling cotton sewing thread, as well in the United States as in England, which is put up for sale on spools labelled on the top 'Taylor's Persian Thread,' and on the bottom 'J. & W. Taylor, Leicester,' with the number of the thread, and number of yards on each spool, and with other devices thereon, for the purpose of distinguishing their spool threads described in the said bill, from spool thread manufactured by others. A portion of said spools were red, and a portion of them black, according to the number of yards on each; that the complainants have established agencies in the United States for the sale of their threads in Boston, New York, &c., and have employed, and employ a general agent, viz: B. Warburton, who resides in New York; that in order to guard against frauds, the complainants caused their threads to be enclosed in envelopes, some bearing a stamp of a coat of arms and motto, others bearing

---

1 [Reported by William W. Story, Esq. 2 West Law J. 187, contains only a partial report.]

a stamp, inscription or caution to purchasers in the words following: 'The Persian thread made by J. & W. Taylor is labelled on the top of each spool, "Taylor's Persian Thread," and on the bottom "J. & W. Taylor, Leicester." The above is for the protection of buyers against piratical articles of inferior quality, fraudulently labelled with the name of Taylor.' That the defendant has extensively manufactured and sold spurious threads of inferior quality, put up on spools similar to those used by complainants, and colored, stamped and labelled, and enclosed in envelopes resembling exactly the spools, labels, devices, trade marks and envelopes used by the complainants; that this conduct of the defendant has greatly injured the complainants, not only by depriving them of the profits on the sale of large quantities of their own threads, but by the prejudice to the reputation of the article manufactured by them, caused by the inferior quality of the threads sold by the defendant."

The complainants further state, that they have obtained specimens of such spurious threads, &c., which they are ready to exhibit to the court; that they filed their bill against the defendant, before the chancellor of New York, substantially alleging the same grievances as are set forth in this bill; —that the defendant by his answer admitted, that he had used the name, and trade marks of the complainants as set forth in their said bill, but denied that the article manufactured by him was inferior to that of the complainants. They charge, that the said conduct of the defendant is a fraud, as well on them, as on the citizens of this commonwealth, and of the United States, purchasing said spurious threads as genuine, and they pray for an injunction against the defendant, and for an account.

The defendant in his answer admits, that the plaintiffs are aliens residing in Leicester, England, and they, or others, using the said name, have been engaged in vending sewing cotton threads, in New York and Boston; but he does not admit that they are the manufacturers thereof, but alleges, that they purchase, and wind it on spools labelled and marked as in the bill set forth, and enclosed in envelopes as described in the bill; that the threads so vended by complainants have acquired a good reputation in the United States, but that the reputation of the same had fallen off before he began to put up threads; that he has been informed and believes, that during the last three or four years, large quantities of thread have been spooled and labelled and packed as "Taylor's Thread" or "Persian Thread," in England, by persons other than complainants, and exported to the United States as the thread of the complainants, so publicly, that the complainants knew the same, or were legally affected with notice thereof; that his thread is as good as that of the complainants; that he has put up thread on black spools labelled

as aforesaid, in envelopes similar to those described by complainants as being printed in raised letters; but that he never put up thread in envelopes bearing a coat of arms, &c., on red spools, or on spools labelled 300 yards, or with a coat of arms, &c. That he has consigned his thread to F. D. Ellis for sale, as his agent, and always instructed him to inform purchasers, that they were of domestic manufacture; that he is informed by Ellis, and believes, that he never pretended that the said threads were those vended by complainants, and that he, the defendant, never sold any under such pretence—on the contrary they always informed purchasers, that the said threads were of domestic manufacture, and not made or put up by the complainants; that the complainants are aliens, and have no exclusive right of vending spool cotton thread, put up, labelled and marked in the manner set forth by the bill; that the defendant had full right and lawful authority to manufacture and put up on spools, and with labels, in all respects similar to those of the complainants, and to sell the same in the United States, without becoming liable to the plaintiffs for so doing. He denies, that any citizens of the United States have been damnified. He avers that for six or seven years before, and ever since he commenced putting up threads as aforesaid, divers persons other than the complainants or defendants, have manufactured and put up thread on spools, colored, labelled, &c., in the same manner as alleged by the complainants, for sale, in the United States, so publicly, that the complainants or their agents, either knew the same or were affected with notice thereof; that according to the custom of trade, he, the defendant, is not liable or accountable to the complainants, or to any foreign manufacturer or trader, for using in the United States their marks, numbers, labels, names, stamps, figures, designs, &c. The defendant admits the commencement of a suit by the complainant against him in New York, and that he answered the same in haste, &c., and he submits, that as the matter in dispute here is involved in the suit in New York, he ought not to be held further to answer before the court here.

The cause was briefly argued by C. P. & B. R. Curtis, for plaintiff, as follows:

The points of defense set up by the answer seem to be: (1) That the complainants are aliens, and for this cause not entitled to the protection sought by the bill. (2) That persons other than the complainants have manufactured and put up for sale, and have vended threads on spools, &c., similar to those of the complainants, and with their knowledge, express or constructive. (3) That the defendant has not sold thread put up on red spools, nor contained in any but one description of the complainants' envelopes. (4) That the defendant has not sold any threads put up, &c., in imitation of the complainants' with-

out giving notice to the purchasers, that they were not threads of the manufacture of complainants.

The defendant admits that he has imitated the names, trade marks, &c., of the complainants, on black spools, and has sold a large quantity of them contained in envelopes, with the inscription in raised letters, set forth in the bill. The depositions filed in the case, show that Ellis, the defendant's agent, has sold threads marked, put up, &c., in imitation of the plaintiff's threads, on both descriptions of spools, and without giving notice to the purchaser of its not being genuine "Taylor's Persian Thread." No evidence is produced by the defendant to show that other persons have imitated the manufacture of the plaintiffs, and sold the simulated article, with or without plaintiff's knowledge. And, if proved, it would be immaterial, unless shown to be so general and so well known to the plaintiffs as to be evidence of an abandonment by them of their names and trade marks. An alien (friend) is entitled to the same civil remedies in the courts of the United States, at law or in equity, that a citizen of the United States enjoys. Act Cong. Sept. 24, 1789, § 11 [1 Stat. 78]. In Snowden v. Noah, 1 Hopk. Ch. 347, and Bell v. Locke, 8 Paige, 75, the doctrine was held, that a bill for an injunction might be maintained by a citizen of the United States, against one who assumes the name of the complainants' newspaper, for the purpose of imposing on the public and supplanting complainant in the good-will of his paper. This principle is the same as that which is contended for the plaintiffs. The recent case of Coates v. Thayer [unreported], before Judge Story, is also directly in point. That was a bill for an injunction by alien plaintiffs against engravers. An injunction was ordered, notwithstanding the defendant's exceptions to the alienage of the plaintiffs. The plaintiffs in this suit are entitled, by the course and proceedings of courts of equity, to call on this court to restrain the defendant from fraudulently using the names of the plaintiffs. An injunction was granted, on the filing of the bill in this case, which the complainants now ask to have made perpetual.

STORY, Circuit Justice. I have not the slightest doubt, in the present case, that a perpetual injunction ought to be granted. The case presented is one of unmitigated and designed infringement of the rights of the plaintiffs, for the purpose of defrauding the public and taking from the plaintiffs the fair earnings of their skill, labor and enterprise.

Various grounds of objection are suggested in the answer of the defendant, none of which appear to me to be of any validity. First, it is suggested, that the plaintiffs are aliens. Be it so. But in the courts of the United States, under the constitution and laws, they are entitled, being alien friends, to the same protection of their rights as citizens. There is no pretence to say, that if a similar false imitation and use of the labels of a citizen put upon his own manufactured articles, had been designedly and fraudulently perpetrated and acted upon, it would not have been an invasion of his rights, for which our law would have granted ample redress. There is no difference between the case of a citizen and that of an alien friend, where his rights are openly violated.

Another objection is, that the defendant has not had all descriptions of thread put up on spools, and labelled by the plaintiffs. That, if true, would make no difference. It is sufficient, if there be a violation of their rights by the defendant, in imitating and using any of the labels and spools, with a view to deceive the public. There is no evidence to establish, that the public were either forewarned, or forearmed, as to the deception. In point of fact, it appears from the evidence, that the defendant has imitated, and sold both descriptions of spools and labels, red and black, of the plaintiffs. Again, it is said, that other persons have imitated the same spools and labels of the plaintiffs, and sold the manufacture. But this rather aggravates, than excuses the misconduct, unless done with the consent, or acquiescence of the plaintiffs, which there is not the slightest evidence to establish; or that the plaintiffs ever intended to surrender their rights to the public at large, or to the invaders thereof, in particular. I do not quote cases, to establish the principles above stated. They are very familiar to the profession; and are not now susceptible of any judicial doubt. See 2 Story, Eq. Jur. § 951. I shall accordingly decree a perpetual injunction.

[NOTE. An action on the case was subsequently brought to recover damages for the infringement of the trade mark, to the amount of $20,000. At the trial a verdict was found for plaintiffs for $800. The defendant then moved the court to set aside this verdict, and grant a new trial. The new trial was refused, and judgment had on the verdict. Case No. 13,785.]