Tlie opinion of tlie Court was delivered by
Levy, J.
Similar judgments, based on tlie same evidence in botb these cases, have been rendered, and they are consolidated for trial before this Court. The defendants are the appellants.
Plaintiff alleges infringements of his trade-mark of a preparation known as “ Boker’s Bitters,” by defendants, and in Ms suits prayed for and obtained injunctions, and sought damages on account of said infringements. There were judgments in the lower court, perpetuating the injunctions and awarding to plaintiff, in each of the suits, damages to the extent of ñve hundred dollars.
■In his petition, plaintiff alleges that, since February, 1860, be has manufactured a medicinal preparation, or bitters, of great value, which has been successfully used as a specific in certain diseases; that this preparation has always been made of the best Cologne or French spirits, mixed with other ingredients of good quality and valuable curative properties, and to this preparation the name of “ Boker’s Stomach Bitters” was given many years since, and is the peculiar name by which it has always been known in the markets of this and other countries; that it lias "been officially recognized by tlie United States Commissioner of Internal Eevenue, who has decided it to he a medicinal preparation which, if properly stamped, may be sold by druggists and apothecaries, without rendering them liable to pay a special tax as liquor dealers; that these “ Bitters ” were first manufactured in 1828, by John G-. Boker; from 1828 to January, 1853, tlieir manufacture and sale was conducted by said John G. Boker, in conjunction with his brother, E. Boker, in tlie name of John G. and E. Boker j E. Boker died in 1853, and the business was then conducted under tlie style of John G. and bis son, J. Boker, the former continuing as sole owner of tlie trade-marks, and receipts and manufacture. On the 29th of February, 1860, Jolm G-. Boker sold tlie business, tbe good will, the trade-marks, receipts, and everything pertaining to the mann *83 facture and sale of the “ Bitters” to plaintiff, who was the son-in-law of said John G. Bolter; that since said sale, plaintiff has been the sole and undisputed owner of said business, receipts and trade-niarlts, labels, and rights to use the same, and signatures of the old firms, and has had the exclusive right to, manufacture and sell said Bitters, and has manufactured and sold them in largo quantities, made of the best, and finest materials; that, in 1853, the manufacturers adopted as a name and trade-mark, the words: “ Boker’s Stomach Bitters;” that from that date, they branded on the boxes or packages containing this preparation these words, and on the top of the boxes : “ J. G. & J. B. Boker,” and since, after notice to that effect, there has been an additional label with a fao simile of the signature of said firm ; that at the same time and ever since, the manufacturers, for the further purpose of distinguishing the said Bitters, have affixed to every bottle thereof, a red label with the words : “ Stomach Bitters, imported by J. G. & J. B. Boker, New York,” printed thereon, and elaborated ornamentally, which they made part of their trade-mark for labels, and to avoid counterfeiting they put up their bitters in bottles of peculiar shape, easily distinguished from bottles generally used for other bitters; that his assignor invented the name “ Boker’s Stomach Bitters” and he was first to use the same, and the symbols, bottles and insignia described as his trade-mark; that his said business has involved great expenditure of money and labor; that said trade-mark has become very valuable to him, etc.; that the defendants have for several years illegally manufactured and sold, and are still manufacturing and selling an inferior quality of bitters, which they represent to be the bitters manufactured and sold by plaintiff, and with the intention to deceive the public, and fraudulently derive advantage thereby, they have used the same form of bottles, adopted by plaintiff, and have affixed thereto a notice similar to plaintiff’s and a counterfeit of the signatures of John G. and J. Boker, and a counterfeit and close imitation of the red label of plaintiff and the words thereon, and the symbols and insignia surrounding said words, and with same intent, have imitated and counterfeited on the boxes used by them the labels and words selected and used by plaintiff and his assignor, as set forth above. He also alleges that the sale of inferior bitters by the defendants, as the genuine “ Boker’s Stomach Bitters” has greatly injured the reputation of plaintiff’s preparation, and this has materiallyinjured plaintiff in his business.
Defendant filed an exception of no cause of action and also answered, denying that the words used by plaintiff constitute a trade-mark, and alleging that, even if they do, plaintiff has no right or ownership therein entitling him to the exclusive use and appropriation óf the *84 saíne; that for more than twenty-five years the pretended trade-mark lias been and is now in common public use, and this has not been objected to, bnt lias been acquiesced in by plaintiff and his assignor, and that no exclusive right, to the same can be maintained. Further, they aver that the representation on the labels that the said compound is imported, is false and fraudulent and intended as a fraud upon the public, and, therefore, plaintiff is not entitled to the exclusive use or the protection demanded by him. He avers also that plaintiff holds out to the public, not that he is the owner, hut that he is the agent of the proprietors, whose names are not discovered; that, if he is agent, he is without right to stand in judgment; that if such representation is not true, then he is guilty of fraud and deceit upon the public, which estops him from demanding file interposition of this Court. They also deny that the preparation is possessed of medical and curative qualities, and aver that such representations are a fraud and estop plaintiff’s demand.
Thé defenses setup in the answer may he thus summarized, and will he considered in their order :
1. That plaintiff has not proved by legal evidence Ms proprietary interest, in tlie trade-marks and labels.
The testimony of many witnesses in the record proves satisfactorily that plaintiff and bis vendors for a great number of years liave been in tlie ownership of the trade-mark and labels, and this testimony was not objected to. The objection to the admissibility of tlie copy of tlie act of sale to plaintiff, as evidence, was not ruled upon, and no bill of exceptions was taken to its admission. We tliink the ownership is fully proved. 1 Dillon’s U. S. C. C. R. 329 ; 9 La. 424.
2. Thatplaintiff lias failed to prove that these hitters have medicinal properties.
The testimony and, indeed, the universal opinion on the subject makes it clear to our mind, that hitters are.regarded as tonics and are useful in the correction of many disorders of the stomach; that these, particular bitters liave been in general use, as such, for a very long time ; that they are pure and made of good materials; that the United States Internal Revenue Department recognized them as valuable and exemi>ted them from the special liquor tax, which exemption is only made in cases of liquors which are regarded as forming part of medicinal preparations. 100 U. S. R. 617; 6 Wait’s Actions 27; 24 A. 97.
3. That plaintiff is guilty of fraud in representing on his labels that the hitter is “ imported ” and is tlms disentitled to equitable remedy.
The evidence satisfies us that the use of this word on the label was not made for the purpose of deceiving the public or with fraudulent intent.
*85 In the case of Wolfe vs. Barnett & Lion, 24 A. 97, this Court held -. “ hut if the trade-mark consists of something else, as the plaintiff’s own name combined with a sonorous appellation, well calculated to express origin and ownership, as well as to attract the attention and impress the memory of buyers, it is only necessary that he should manufacture, without exclusive right, or represent a manufacturer.” And we think the true rule, as applicable to this case, is correctly stated in the following passage, (from Upton, on Trade-Marks, page 97) to be this:
“ That the honest,• skillful and industrious manufacturer or enterprising merchant, who has produced or brought into the market an article of use or consumption that, has found favor with the public, and who, by' affixing to it some name, mark, device or symbol, which serves to distinguish it as his, aud to distinguish it from all others, has furnished his individual guaranty' and assurance of the quality and integrity'’ of the- manufacturer, shall receive, the first reward of his honesty, skill, industry or enterprise; and shall in no manner and to no extent be deprived of the same by another, who, to that end, appropriates and applies to his iiroduetions the same or a colorable imitation, of the some name, marie, device or symbol, so that the public are, or may be, deceived or misled into the purchase of the productions of the one, supposing them to be those of the other. 17 Barbour, 608 ; 3 Sanford, 725; 25 Barb. 416.”
In the case of Insurance Oil Tank Co. vs. Scott, recently decided by us and reported in 33 A. 946, this Court considered and passed upon a question much like this; in the last named case, the word patented being used upon the labels or plates, when it was contended that the article liad not been really patented. We there held: Defendant urges that the use of the abbreviation ‘Pat.,’ meaning patented, in the trade-mark, is a fraud on the public and a violation of law, which deprives plaintiff of the right of redress. It is undoubtedly true that the affixing of the word ‘patent’ to an unpatonted article, ‘for the purpose of deceiving the public, is prohibited, under penalties, by the laws of the United States ; U. S. R. S. § 4901; and that a representation in a trade-mark that an unpatented article is protected by a patent, prima facie amounts to a misrepresentation of an important fact, which would disentitle the owner of the mark to relief in a court of equity, as against a pirate. Browne on Trade Marks, § 572; Coddington’s Digest Tr. M. Cases § 548; 39 Conn. 450. But to-have such effect, the use of the word ‘ patented7 must be ‘ with the purpose of deceiving the public,’ and if such fraudulent intention does not exist, and the use of the word may be explained in any reasonable sense consistent with truth and honesty, the party' will not be prejudiced. High on Injunc *86 t.ions, §674; Ooddington’s Dig. §§570, 571.” Also: “It may be, as contended by defendant, tlmt the oil sold by him under plaintiff's trademark is equal, in all respects, to the oil of plaintiff. But, if defendant may use this mark, other less conscientious dealers may employ it for inferior and dangerous oils; and the public would thereby bo deprived of the security now enjoyed in the purchase of oil so marked, and the business of plaintiff would be destroyed.” Ibid. “ Defendant has no right, in justice or in law, to trade upon the reputation and business sagacity and enterprise of plaintiff, which are represented by and embodied in its trade-mark.” Ibid. See also Coddington’s Dig. §§ 546, 543, 558, 561, 565, 570, 571 ; Cox on TradeMarks, 117, 195, 591, 106, 180.
The use of the words “ sole agent,” by plaintiff, which is dwelt upon by the defense, lias been satisfactorily explained and falls under the the above reasoning, because they were not used for the purpose of deceiving the public or with fraudulent intent.
4th. Defendants contend that, from long rise by others, they were justified in imitating the trade-mark, and they supposed acquiescence on the part of the owner.
The doctrine of acquiescence is ably and elaborately discussed in Browne on Trade-Marks, § 685. That author says: “ Story, J., once spoke thus: Again it has been said that other persons have imitated the same spools and labels of the plaintiffs, and sold the manufacture. But this aggravates rather than excuses the misconduct, unless done with the consent or acquiescence of the plaintiffs, which there is not the slightest evidence to establish; or that the plaintiffs ever intended to surrender their rights to the public at large or to the invaders in particular.” 3 Story, 458. In another case, Woodbury, J. said: “I am not aware of any principle by which a usage in this or a foreign country is competent evidence in defense of a wrong.” “ But I am not aware that a neglect to prosecute, because oue believed he had no rights, or from mere procrastination, is' any defense at law, whatever it may be in equity.” “ There is something very abhorrent, in allowing such a defense to a wrong, which consists in counterfeiting others’ marks or stamps, defrauding others of what liad been gained by their industry and skill, and robbing them of the fmits of their ‘ good name,’ merely because they have shown forbearance and kindness.” “ It is rather an aggravation to the plaintiff that many others have injured them.” 2 Wood and M. 1; 44 Mo. 173.
5th. Defendant invokes the prescription of one year. We do not think it tenable. We concur with counsel for the plaintiff and the authorities cited by him, that the “ infringer who illegally appropriates an invention to his own use, making profit thereby, may be treated as *87 Ms trustee in respect of suck profits and compelled to account therefor in eqMty.” Browne on Trade-Marks, § 507 $ Louque’s Dig. p. 571; 19 A. 492, etc.
Under all tke circumstances of tliis case, however, we are not disposed to increase the damages allowed by the lower court.
The judgments appealed from are, therefore, affirmed at costs of the appellants.
Rehearing refused.