(160 App. Div. 607)

### JULIUS KAYSER & CO. v. ITALIAN SILK UNDERWEAR CO.

(Supreme Court, Appellate Division, First Department. February 13, 1914.)

1. COURTS (§ 489*)—JURISDICTION OF STATE COURTS—INFRINGEMENT OF.

Act Cong. March 3, 1881, c. 138, 21 Stat. 502 (U. S. Comp. St. 1901, p. 3401), respecting trade-marks upon goods, the subject of commerce with foreign nations, and the Indian tribes, providing by section 10 that nothing therein should lessen or avoid any remedy at law or in equity which any party aggrieved by any unlawful use of a trade-mark might have, and Act Cong. Feb. 20, 1905, c. 592, 33 Stat. 724 (U. S. Comp. St. Supp. 1911, p. 1459), providing for the registration of such trade-marks, and by section 23, re-enacting section 10 of the previous act, did not take away or impair the jurisdiction of the state courts over suits for the protection of trade-marks, whether registered or not.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRADE-MARKS AND TRADE-NAMES (§ 21*)—SUBJECT OF OWNERSHIP—PROTEC-
TION—GEOGRAPHICAL NAMES—FEDERAL STATUTES.

Trade-Mark Act Feb. 20, 1905, c. 592, 33 Stat. 724 (U. S. Comp. St. Supp. 1911, p. 1459), providing that no mark consisting merely of a geographical name or term should be registered, but that nothing therein should prevent the registration of any mark used by an applicant or his predecessor or others from whom title to the mark was derived, in foreign or interstate commerce, "which was in actual and exclusive use as a trade-mark of the applicant, or his predecessor from whom he derived title, for ten years next preceding the passage of this act," entitled the geographical term or word "Italian," used by plaintiff and his predecessor for more than ten years in connection with their manufactured underwear, to registration, and the duly issued certificate therefor to protection.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 24; Dec. Dig. § 21.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 70*)—COMMON LAW—UNFAIR COMPETI-
TION.

Plaintiff's predecessor in 1893 originated and adopted the trade-mark "Italian" as applied to silk underwear of its manufacture to indicate the origin thereof, and in 1898 received a certificate of registration from the Patent Office, and during his continual use thereof the word acquired a secondary meaning, and was not understood as implying that the underwear so marked was manufactured in Italy, or by Italians, or from Italian silk, the silk in fact used being Japan silk, but to identify the goods as manufactured by the plaintiff and as indicating its quality, and a large foreign and domestic trade in such goods had been built up. In 1911, defendant incorporated under the name "Italian Silk Underwear Company," manufactured a lower grade of goods than plaintiff, and sold them under the mark "Italian," packed in similar boxes to which were attached printed tags identical in size and shape with those used by plaintiff and with similar directions thereon. Held, that under the principles of the common law plaintiff had an exclusive right to the word "Italian" in connection with the silk underwear manufactured by it, and that defendant's appropriation and use of it was an unfair competition and a violation of the plaintiff's rights which would be enjoined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. §.70.*]

Appeal from Special Term, New York County.

Action by Julius Kayser & Company against the Italian Silk Underwear Company. From a judgment restraining defendant from using plaintiff's trade-mark, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Joshua Haberman, of New York City, for appellant.

Hardy, Stancliffe & Whitaker, of New York City (Charles J. Hardy, of New York City, of counsel, and Frederick P. Whitaker, of New York City, on the brief), for respondent.

CLARKE, J.    The judgment appealed from adjudges and decrees that:

"The trade-mark 'Italian' (registered by the plaintiff's predecessor in the United States Patent Office on the 7th day of July, 1908, for which a certificate of registration was issued to said Julius Kayser & Co. numbered 69817 in the name of the United States of America and under the seal of the United States Patent Office and signed by the Commissioner of Patents), as applied to silk underwear, is a valid trade-mark, is the property of plaintiff, Julius Kay-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ser & Co., and said Julius Kayser & Co. is, as against the defendant, entitled to the exclusive use thereof."

And further:

"That the use by the defendant, the Italian Silk Underwear Company, of its said name 'Italian Silk Underwear Company,' is unlawful and constitutes an infringement of the plaintiff's said trade-mark 'Italian' and of plaintiff's property and rights therein, and that the defendant, the Italian Silk Underwear Company, be, and it and its officers, servants, agents, and employés hereby are, forever restrained from directly or indirectly using its said name 'Italian Silk Underwear Company' or any name so similar thereto as to be calculated to deceive, in connection with the sale or offering for sale of underwear manufactured by the defendant, 'The Italian Silk Underwear Company.'"

And is further ordered:

"That the defendant, its officers, servants, agents, and employés, be and they hereby are forever restrained from engaging in unfair competition in trade with the plaintiff, and the defendant, the Italian Silk Underwear Company, and its officers, servants, agents, and employés, hereby are forever restrained from packing, dressing, and labeling its underwear in the form and manner complained of by the plaintiff in form and manner, or so closely resembling the packing, dress, and labels of the plaintiff as to be calculated to deceive."

The court found, as matters of fact: That both plaintiff and defendant are engaged in the business of manufacturing and selling silk underwear, and plaintiff has been engaged in said business for the past 20 years. That plaintiff's predecessor, in the year 1893, adopted, originated, and has since continually used the trade-mark "Italian" as applied to silk underwear of its manufacture, to indicate the origin thereof, and marketed and sold underwear under such trade-mark. That at the time of the adoption of said trade-mark no other manufacturer of underwear had applied said mark to underwear of his or its manufacture; and that the use of said trade-mark, as applied to underwear, was used in and understood to be used in a purely fanciful sense. That, since the adoption of said trade-mark, the business of manufacturing and selling silk underwear under said mark by plaintiff's predecessor and plaintiff has constantly increased from $2,-000 a year to and in excess of $300,000 a year, and a very large business has been built up by them therein in the several states and with foreign nations; and from 1893 to the present time many thousands of dollars have been expended in advertising their silk underwear under said mark, and said underwear has become very popular and well known to the trade and purchasing public. That during the 20 years of the manufacture and sale of "Italian" silk underwear by plaintiff and its predecessor the name "Italian" has become so associated with the underwear of Julius Kayser & Co., through long-continued and exclusive use thereof, as to become identified with its product, and the word "Italian," as applied to underwear signifies to the trade and the purchasing public the goods of Julius Kayser & Co. and no other, and said name "Italian" has acquired a secondary meaning as identifying the underwear of the manufacture of plaintiff and its predecessor. That plaintiff's predecessor made application for the registration of said trade-mark to the Commissioner of Patents, who allowed the same and issued a certificate of registration on July 7, 1908. That Mor-

ris S. Siegel caused the defendant to be incorporated in December, 1911, after the underwear manufactured by plaintiff and its predecessor under its said trade-mark had become well known to the trade and the purchasing public and had achieved great popularity, and said Siegel caused said name "Italian" to be incorporated in such corporate name of defendant with knowledge of plaintiff's said trade-mark and of the good will established by plaintiff and its predecessor in connection therewith and with the design of benefiting thereby. That defendant has sold its entire output of underwear (except petticoats) under its name of "Italian Silk Underwear Company," and has packed its goods in similar boxes and attached printed tags identical in size and shape to those used by plaintiff and with similar directions thereon. That the use of the name of defendant and the use by it of its said boxes and labels are calculated and designed to cause the trade and the purchasing public to believe that the defendant's underwear is the underwear of plaintiff's manufacture, and confusion has been and will be created by defendant's continued use thereof. And, as a conclusion of law, that the said trade-mark "Italian" as applied to silk underwear is a valid trade-mark, is the property of the plaintiff, and plaintiff is, as against the defendant, entitled to the exclusive use thereof, and that the defendant is engaging in unfair competition with plaintiff.

These findings are sustained by the evidence. The claim is made that "Italian," being a geographical word, may not be appropriated as a trade-mark. I consider this, first, under the United States statutes, and, second, under the principles of the common law as applied by the courts of this state.

[1] 1. The original United States statute, the act of July 8, 1870, carried forward into sections 4937 to 4947, U. S. Revised Statutes, providing for the registration of trade-marks and assuming to confer exclusive jurisdiction upon the federal courts in trade-mark cases, was declared unconstitutional by the Supreme Court of the United States in U. S. v. Steffens, 100 U. S. 82, 25 L. Ed. 550; that court saying:

"The right to adopt and use a symbol or a device to distinguish the goods or property made or sold by the person whose mark it is, to the exclusion of use by all other persons, has been long recognized by the common law and the chancery courts of England and of this country, and by the statutes of some of the states. It is a property right for the violation of which damages may be recovered in an action at law, and the continued violation of it will be enjoined by a court of equity. * * * This exclusive right was not created by the act of Congress, and does not now depend upon it for its enforcement. The whole system of trade-mark property and the civil remedies for its protection existed long anterior to that act, and have remained in full force since its passage."

Soon after this decision Congress passed an act, approved March 3, 1881 (21 Stat. 502, c. 138 [U. S. Comp. St. 1901, p. 3401]), respecting trade-marks upon goods the subject of commerce with foreign nations and Indian tribes. This act, inter alia, provided (section 10):

"Nothing in this act shall prevent, lessen, impeach or avoid any remedy at law or in equity which any party aggrieved by any wrongful use of any trade-mark might have had if the provisions of this act had not been passed."

In re Keasbey & Mattison Co., 160 U. S. 221, 16 Sup. Ct. 273, 40 L. Ed. 402, Mr. Justice Gray said:

"That act, while conferring upon the courts of the United States, in general terms, jurisdiction over such suits, without regard to the amount in controversy, does not specify either the court or the district of the United States in which suit shall be brought; nor does it assume to take away or impair the jurisdiction which the courts of the several states always had over suits for infringement of trade-marks. This suit, then, assuming it to be maintainable under the act of 1881, is one of which the courts of the United States have jurisdiction concurrently with the courts of the several states."

In Smail v. Sanders, 118 Ind. 105, 20 N. E. 296, the court said:

"The state courts have jurisdiction to enjoin a party from infringing the trade-mark of a competitor. The act of Congress assuming to confer exclusive jurisdiction upon the federal courts in trade-mark cases has been pronounced unconstitutional. * * * These decisions settle the question, and, beyond all doubt, settle it correctly, since Congress has no more power to deprive the state courts of jurisdiction in trade-mark cases than it would have to deprive them of power to decide controversies concerning any other species of property. A trade-mark is not within the provisions of the federal Constitution respecting copyrights and patents."

Chapter 592 of the Laws of 1905, approved February 20, 1905 (33 Stat. 724 [U. S. Comp. St. Supp. 1911, p. 1459]), entitled "An act to authorize the registration of trade-marks used in commerce with foreign nations or among the several States or with Indian tribes, and to protect the same," extended the trade-mark provisions to interstate commerce. It likewise contained the provision of the act of 1881 above alluded to (section 23). In Traiser v. Doty Cigar Co., 198 Mass. 327, 84 N. E. 462, 15 Ann. Cas. 219, a bill in equity had been filed to restrain the defendants from infringing a trade-mark of the plaintiff. The defendants filed a plea to the jurisdiction, alleging that one of them had registered with the Commissioner of Patents of the United States a mark, in accordance with the act of 1905, and had received therefor a certificate of registration, and hence that exclusive jurisdiction of all matters pertaining to this trade-mark and its validity was vested in the courts of the United States. The Supreme Judicial Court of Massachusetts said:

"The question presented is whether, when one had registered a trade-mark under the federal statute, he is immune from litigation as to his title to the trade-mark so registered in the state courts, in cases where they would otherwise have jurisdiction."

After referring to the former acts of Congress and to the cases thereunder and to the similar provisions in the two acts, it concluded:

"Plainly, where all the parties to the suit are domiciled in this commonwealth, our courts have jurisdiction to adjudicate, as to their respective rights, between the plaintiff owner of a registered or of an unregistered trade-mark and the defendant owner of a registered trade-mark who is charged with an infringement."

[2] Section 5 of said act provides in part as follows:

"Provided, that no mark which consists merely in the name of an individual, firm, corporation, or association, not written, printed, impressed, or woven in some particular or distinctive manner or in association with a portrait of the individual or merely in word or devices which are descriptive of the goods

with which they are used or of the character or quality of such goods, or merely a geographical name or term, shall be registered under the term of this act.  *  *  *  And provided further, that nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several states, or with Indian tribes, which was in actual and exclusive use as a trade-mark of the applicant or his predecessors from whom he derived title, for ten years next preceding the passage of this act."

The said statute with particular reference to the ten-year clause was construed by the Circuit Court of Appeals of this circuit in Thaddeus Davids Co. v. Davids, 178 Fed. 801, 102 C. C. A. 249. Noyes, J., said:

"The first question, then, is whether a name must be valid as a technical trade-mark to come within the ten-year clause. If this be so, the clause has no force or effect. Technical trade-marks are entitled to be registered under the act regardless of length of use. The owner of a valid common-law trade-mark may register it any time, and he has no greater or less privilege on account of its long use. There is no necessity for thus construing the ten-year clause so as to render it ineffective. In our opinion there is a distinction between the words 'mark' and 'trade-mark' as used in the clause. It provides that nothing shall prevent the registration of any 'mark' used as a 'trade-mark' for more than ten years. The evident purpose is to permit the registration of marks not amounting to technical trade-marks but which have been long used as such. *  *  * It would seem that Congress in the ten-year clause recognized the principle, so often stated by the courts, that words which through association with products have acquired secondary meanings will be protected although not amounting to technical trade-marks, and intended to permit their registration under certain conditions. The act makes a mark actually and exclusively used the requisite period entitled to registration as a trade-mark. And if it is entitled to registration it is entitled to protection. We are unable to appreciate the distinction sought to be drawn by the defendant between the right to register a trade-mark and the right to protect it. *  *  * With respect to names, descriptive words, and geographical terms, we are of the opinion that the proviso prevents their registration if they have been in use for less than ten years, but that the ten-year clause entitled them to registration if they have been actually and exclusively used for more than that period, before the passage of the act."

In Coca-Cola Co. v. Nashville Syrup Co. (D. C.) 200 Fed. 153, Sanford, J., said:

"The effect of the proviso in section 5 of the Act of 1905 was to make a name subject to registry as a valid trade-mark, through such prior use, even although the words were originally merely descriptive and not the subject of a valid trade-mark."

In N. Y. Mackintosh Co. v. Flam (D. C.) 198 Fed. 571, Holt, J., said:

"Moreover, the evidence shows that it was used exclusively by the complainant more than ten years before registration, and therefore the provisions of section 5, of the Trade-Mark Act of 1905, *  *  * apply, that, in such a case, the fact that the term was originally descriptive does not prevent registration."

And to the same effect are Coca-Cola v. Deacon Co. (D. C.) 200 Fed. 105; Coca-Cola v. Am. Druggists (D. C.) 200 Fed. 107; Am. Pencil Co. v. Gottlieb (C. C.) 181 Fed. 178.

It appearing that the plaintiff and its predecessor had exclusively used the mark here in question, although a geographical term, for more

than ten years prior to its application for registration, it was properly admitted to such registration, and, the certificate therefor having been duly issued, it is entitled to protection.

[3] 2. It appears conclusively in the evidence that the word "Italian" as applied by the plaintiff to its goods has acquired a secondary or fanciful meaning, or, as is expressed by certain witnesses, who are buyers for large concerns, "It is a byword." It does not mean, and is not understood to mean by those selling or purchasing the goods, that the underwear marked by it was manufactured in Italy or by Italians, or that the silk of which the underwear is composed was produced in Italy or imported therefrom. It is the evidence that no silk for the weaving or manufacture of such underwear is brought to this country from Italy; that neither the plaintiff nor the defendant uses such silk in the manufacture of underwear produced and sold by either of them. The silk used by the plaintiff is Japan silk of a high quality; the underwear is woven by the method employed in the weaving of silk gloves and is of high quality and runs in price from $24 a dozen to $300 a dozen. The articles manufactured and sold by the defendant are produced from a lower grade of Japan silk and are sold from $11.50 a dozen to $100 a dozen. The plaintiff manufactures and sells a cheaper grade of goods, but to these is never attached the mark "Italian," which is reserved exclusively for articles manufactured from the best of Japan silk. That word is known to the trade and purchasing public as identifying the silk underwear as that manufactured by the plaintiff and as indicating its quality.

In Newman v. Alvord, 51 N. Y. 189, 10 Am. Rep. 588, the trademark claimed by plaintiff consisted of the use of the word "Akron" in designating a cement manufactured by them near the village of Akron, Erie County, N. Y. They and their predecessors had used the word "Akron" as a trade-mark to designate the origin and quality of their cement for over 13 years before the commencement of the action. The defendants manufactured a cement in Onandaga County near Syracuse. They knew that the plaintiff had for years used the word "Akron" as a trade-mark to designate the origin and place of manufacturing their cement. They applied the word to designate their cement by calling it "Akron cement." The Court of Appeals, in affirming a decree granting a perpetual injunction, said:

"The trade-mark must be used to indicate not the quality, but the origin or ownership, of the article to which it is attached. It may be any sign, mark, symbol, word or words, which others have not an equal right to employ for the same purpose. I can perceive no reason why it may not be the name of a place. * * * It is sometimes said, in the cases to which our attention has been called, that the claimant of a trade-mark must have the exclusive right to it. This form of expression, I apprehend, is not strictly accurate. The right must be exclusive as against the defendant. It is generally sufficient, in such cases, if the plaintiff has the right and the defendant has not the right to use it. The principle upon which the relief is granted is that the defendant shall not be permitted, by the adoption of a trade-mark which is untrue and deceptive, to sell his own goods as the goods of the plaintiff, thus injuring the plaintiff and defrauding the public. Here the plaintiffs had given a reputation to the Akron cement in market. They had always been its principal manufacturers and sellers, and, at the time of the commencement of the suit, the sole parties who could be injured by the fraudulent use of the trade-mark by

the defendants, and hence they are clearly entitled to the protection which they seek."

The court expressly, in that case, reserved the question whether an injunction would lie against another manufacturer in the same Akron district who produced cement made from stone from the same quarries. It has been expressly held in Delaware & H. Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581, and Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365:

"That no one can apply the name of a district of country to a well-known article of commerce, and obtain thereby such an exclusive right in the application as to prevent others inhabiting the district or dealing in similar articles coming from the district from truthfully using the same designation."

That principle, however, obviously does not apply to the case at bar, for neither of the parties deals in articles coming from Italy. But in the Elgin Case, supra, the court also said:

"But it is contended that the name 'Elgin' had acquired a secondary significance in connection with its use by the appellant, and should not, for that reason, be considered or treated as merely a geographical name. It is undoubtedly true that, where such a secondary signification has been acquired, its use in that sense will be protected by restraining the use of the word by others in such a way as to amount to a fraud on the public, and on those to whose employment of it the special meaning has become attached. In other words, the manufacturer of particular goods is entitled to the reputation they have acquired, and the public is entitled to the means of distinguishing between those, and other, goods; and protection is accorded against unfair dealing, whether there be a technical trade-mark or not. The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another. * * * In Reddaway v. Banham [1896] A. C. 199, * * * Lord Herschell, referring to Witherspoon v. Currie, L. R. 5 H. L. 508, said: 'The name "Glenfield" had become associated with the starch manufactured by the plaintiff, and the defendant, although he established his manufactory at Glenfield, was restrained from using that word in connection with his goods in such a way as to deceive. * * * Lord Westbury pointed out that the term "Glenfield" had acquired in the trade a secondary signification different from its primary one, that in connection with the word "Starch" it had come to mean starch which was the manufacture of the plaintiff.' "

Witherspoon v. Currie was also cited with approval in Newman v. Alvord, supra.

In Koehler v. Sanders, 122 N. Y. 65, 25 N. E. 235, 9 L. R. A. 576, the court said:

"There are cases where the right to use a name to designate a product is so unqualifiedly exclusive that the right to the protection of its use against infringement by others rests upon the ground that such use by them is an untrue or deceptive representation. This may be applicable to a geographical name designating a locality or district, and which has been adopted by one as a trade-mark and afterwards deceptively used by another upon similar articles."

In Fleischmann v. Schuckmann, 62 How. Prac. 92, it was held (Van Varst, J.) that "Vienna" may be exclusively appropriated for a trade-mark for a particular kind of bread, as it is a purely arbitrary designation and is in no manner descriptive either of the ingredients or quality of the article. The word "Alderny" may be exclusively appropriated as a trade-mark for oleomargarine, as such is entirely arbitrary

and in no respect descriptive of the article. Van Brunt, J., in Lauferty v. Wheeler, 63 How. Prac. 488. So the word "German," when not used in a geographical sense, being applied as an arbitrary name, may be appropriated as the name for sweet chocolate so as to make the use of the word "Germania" as applied to sweet chocolate an infringement. Walter Baker & Co. v. Baker (C. C.) 77 Fed. 181.

This principle may be regarded as the ground for decision in the following cases in which geographical names have been protected as trade-marks. "Ethiopian" for black cotton stockings. Hine v. Lart, 10 Jur. 106. "Indian Pond" and "Green Mountain" for scythe stones. A. F. Pike Mfg. Co. v. Cleveland Stone Co. (C. C.) 35 Fed. 896. "Quinnebog," "Western Red End," and "Lake Huron" for scythe stones taken from quarries situated at or near Grindstone City, Mich. Cleveland Stone Co. v. Wallace (C. C.) 52 Fed. 431. "Taylor's Persian Thread" for thread manufactured in England. Taylor v. Carpenter, 3 Story, 458, Fed. Cas. No. 13,784; Taylor v. Taylor, 23 L. J. Ch. N. S. 255; Taylor v. Carpenter, 11 Paige, 292, 42 Am. Dec. 114, affirmed 2 Sandf. Ch. 603. "Turin," "Sefton," "Leopold," and "Liverpool," for patterns of cloths manufactured at Huddersfield, Eng. Hirst v. Dunham, L. R. 14 Eq. 542.

In a note to the decision in the Elgin National Watch Co. Case, 179 U. S. 665, 21 Sup. Ct. 270, as reported in 45 L. Ed. 365, 370, citations from the Official Gazette are given showing that in the United States Patent Office geographical names were registered as trade-marks as wholly fanciful or arbitrary in their signification, as follows: "Dublin" for soap made in this country. "German Syrup" for a medical compound not a German product. "Dover" as applied to household goods manufactured by a Massachusetts corporation in its factory at Cambridge and its place of business at Boston. "Vienna" for flour manufactured at Pittsburgh. "Florentine" for rolled plate glass. "Menlo Park" for time-keeping instruments made at Canton, Ohio.

In International Cheese Co. v. Phenix Cheese Co., 118 App. Div. 499, 103 N. Y. Supp. 362, a manufacturer at Chester, N. Y., was upheld in his claims to the trade-name "Philadelphia Cream Cheese."

It seems to me that the plaintiff has clearly established, as against the defendant, an exclusive right to the word "Italian" in connection with the silk underwear manufactured by it, and that the defendant's appropriation and use of the word in 1911, after plaintiff had made it valuable by long years of use, by registration in the Patent Office, and by building up a large and successful business, was a violation of plaintiff's rights.

The judgment appealed from should be affirmed, with costs and disbursements to the respondent. All concur.