NATIONAL TOOL SALVAGE COMPANY, Plaintiff, *v.* NATIONAL TOOL SALVAGE INDUSTRIES, INC., Defendant.

Supreme Court, Special Term, New York County, January 28, 1946.

*Charles J. Nehrbas* for plaintiff.

*Alvin I. Perlmutter* for defendant.

EDER, J.   Plaintiff and defendant are engaged in the same business, that of reservicing, reconditioning, resharpening and recutting tools. Plaintiff sues to enjoin and restrain the defendant from continuing to use the words " National Tool Salvage " as part of its name or in any manner in connection with its business and for such other and further relief as to the court may seem proper.   It claims it acquired prior right to the use of these words and the basis of the suit is that the defendant by the afore-mentioned use is engaged in unfair competition and that confusion has resulted as a consequence. Defendant concedes confusion has arisen and still continues; in turn, by its counterclaim it seeks to enjoin and restrain the plaintiff from using or continuing to use the quoted words as part of its name and in any manner in connection with its business in this State.

At the trial defendant's counsel stated: "It is conceded that a certain amount of confusion arises in New York. * * * We have admitted the confusion, and we hope in that fashion have eliminated that question as an issue, in order to get a firm decision as to whether the plaintiff or the defendant is entitled to use the name in New York."

Plaintiff is a Michigan corporation; its name resulted from a merger of two corporations, viz., National Grinding Company, incorporated in 1924, and the Tool Salvage Company, which started business in 1912; in 1926 these companies were merged under the name "National Tool Salvage Company". Its business is of national scope and it serves customers in forty-five States of the Union; all of its property and assets and its place of business are located in Detroit; it has neither assets, property nor an office in this State. It has several hundred customers in New York State whom it has serviced and who have dealt with plaintiff practically since its organization. It has a representative here who is not an officer of the company, who is not paid any salary, but who works on a commission basis only and pays his own expenses, and merely solicits orders which are transmitted to the plaintiff in Detroit for attention and servicing at its plant in Detroit. Plaintiff does a very substantial volume of business running into hundreds of thousands of dollars; it numbers among the concerns to which it renders service the Navy Department, Bureau of Ships, the American Locomotive Company and the Westinghouse Electric Corporation. Its representative or solicitor has no regular office here but has an arrangement under which he receives telephone messages through a service conducted and known as a telephone message service.

Plaintiff advertises in various magazines and national trade papers which have circulation in New York; it also sends out cards, circulars and literature which is mailed to the trade at large, to present as well as prospective customers; this is continuous. The defendant likewise advertises in trade publications and also solicits orders through the mailing of circulars in and out of New York State.

Plaintiff's name is featured in bold, heavy type, uniform in size, reading "NATIONAL TOOL SALVAGE COMPANY" and with the symbol "NTS". The defendant in the use of its name similarly features in bold, heavy type, uniform in size, the words "NATIONAL TOOL SALVAGE" but the word "Industries" is in script of very thin and unattractive type, thus reading "NATIONAL TOOL SALVAGE *Indus*

*tries, Inc."* and with the symbol " NTSI." The word " *Indus-tries* " is set forth in a negligible manner and at times is hardly discernible. Defendant's letterhead, cards and literature advertise that its business is national in scope, " from Coast to Coast." What defendant strongly emphasizes and displays are the words " NATIONAL TOOL SALVAGE "; the word " *Industries* " is so set out that it sinks into insignificance. This is apparent from a mere glance.

In 1942 plaintiff first became aware of the existence of defendant corporation and on July 14, 1942, its Detroit counsel wrote to defendant of this fact and that confusion had resulted and requested defendant to change its name. No reply was received from defendant and a few weeks later, an officer of the plaintiff, the witness Lang, called at the defendant's office and had a conversation with defendant's witness Oldofredi, its executive officer and manager, and who appears to be the corporation; Lang said Oldofredi admitted the receipt of the letter and stated that he was a recent arrival in this country, that it was a free country and that he could do as he pleased. In that connection Lang told him that if he did not desist from the use of the words " National Tool Salvage " legal action to restrain its use would ultimately have to be taken. Such use continued and this action resulted.

Plaintiff's evidence establishes that the name " National Tool Salvage Company " has acquired a secondary meaning in the industry and that the name when it is mentioned in that industry is associated with the plaintiff as having been pioneers in that field and that that is so throughout the United States.

Oldofredi, testifying for the defendant, stated he commenced doing a tool salvage business in January, 1942; that he first wanted to use the name " American Tool Salvage Industries " but found, upon making inquiry at the county clerk's office that it was not available and after examining the telephone and other directories decided upon the name " National Tool Salvage Industries "; that he selected that name because he thought it indicated the national scope of the company and that he then filed a certificate of the assumption of that name with the county clerk; that subsequent to the assumption of that name he, in May, 1942, incorporated his business in the State of Delaware, the date of incorporation being May 7, 1942. In 1944 a certificate of authority to do business in this State was obtained, he signing the application as vice-president of the defendant; it was executed under date of September 12, 1944, and was filed on September 16, 1944.

He further testified that he first caused a search to be made of the records of the Secretary of State to ascertain if the name or a similar name was in use by a company incorporated in New York and learned that it was not and thereupon filed said application. He admitted, however, that when he did so, in 1944, he knew, of course, of the existence of the plaintiff corporation, of the plaintiff's use of the name " National Tool Salvage Company ", of the letter of July 14, 1942, of Lang's call and objection, and of the plaintiff's protest of the use of the words " National Tool Salvage ". He sought to overcome it by saying that subsequent to Lang's call and protest he arranged to use a legend to indicate that defendant was a concern other than plaintiff, the legend reading " Identify our company by the word Industries. No connection with any other concern ". But only some, and not all, of defendant's printed matter contain this legend. It is not featured prominently, but rather inconspicuously, and is entirely omitted from the defendant's printed circulars mailed to the trade in general, in this State and elsewhere, and, significantly, is wholly omitted from defendant's advertisement in the New York Red Book Classified Telephone Directory, although Oldofredi testified that 95% of the defendant's business was done in New York; and where the slogan does appear, what is strongly and boldly featured are the words " National Tool Salvage ", with the word " Industries " occupying a secondary and not a primary position and negligibly displayed. Despite the phrase it is conceded that confusion continues.

Defendant stresses strongly and places large reliance on the fact that plaintiff is a foreign corporation unauthorized to do business in this State and hence is not entitled to enjoin the defendant from using its name as it does. I do not agree that this is a correct premise. Section 210 of the General Corporation Law provides that " A foreign corporation, other than a moneyed corporation, shall *not do* business in this state without having first obtained from the secretary of state a certificate of authority." (Italics supplied.) Section 219 authorizes the Attorney-General to bring suit in the Supreme Court to enjoin a violation of this provision. But I fail to perceive the relevancy here. The plaintiff does not " do business " within the meaning of section 210 or of section 218. " The cases are many that merely soliciting orders within the State which are accepted outside the State, does not constitute doing business within the State; likewise the placing of a name on an office door or the listing of a name in a telephone directory or the keeping of

samples here, is not evidence that one is doing business within the State. The law with respect thereto is now so well settled that citation is unnecessary.'' (*Debrey* v. *Hanna,* 182 Misc. 824, 827.)

The fact that a foreign corporation is doing business in this State without having obtained the certificate of authority required (General Corporation Law, § 210) does not estop it from maintaining such a suit as this against a domestic corporation or against a foreign corporation authorized to do business here if it is shown that the defendant adopted its name in fraud of the plaintiff's right. The case of *American Tartar Co.* v. *Am. Tarter Co.* (57 App. Div. 411), mainly relied on by defendant, does not hold to the contrary and recognizes this exception. '' The right of a foreign corporation to equitable relief by injunction against the fraudulent use of the same or similar name by a domestic corporation in the state and federal courts '' is supported by abundant authority (*Modern Woodmen of America* v. *Hatfield,* 199 F. 270, 274, and cases there cited).

Nor does the fact that the defendant procured from the Secretary of State a certificate of authority to do business here add any support to the defendant's position. A corporate charter grants no immunity in the use of a deceptive name (*H. Co.* v. *H. S. Co.,* 144 N. Y. 462, 468; 63 C. J., Trade-Marks, Trade-Names and Unfair Competition, § 122, p. 439) and the issuance of the certificate is not an answer to a claim of unfair competition (*Pansy Waist Co., Inc.,* v. *Pansy Dress Co., Inc.,* 203 App. Div. 585, 586).

On the merits I am satisfied that the adoption and use by the defendant of the words '' National Tool Salvage '' in its corporate name and the application for the certificate of authority to do business here under it were designedly done as an act of piracy of plaintiff's corporate name and for the purposes of unfair competition. The documentary evidence fully establishes it. Oldofredi knew in 1942 of plaintiff's protest and threat of suit if he persisted in using the words '' National Tool Salvage '' and '' with full knowledge of that fact '' the defendant applied for and obtained the certificate of authority and '' continued its business under its corporate name.'' (*Pansy* case, *supra,* p. 588.)

Defendant's protestation of good faith and honesty of purpose is sham and a subterfuge.

In *Eastern Const. Co.* v. *Eastern Engineering Co.* (246 N. Y. 459), these principles were declared: (1) Misrepresentation in the use of a corporate name, although innocent at inception, may

become wrongful, if persisted in after knowledge of its tendency to deceive; (2) if the use of a name by defendant induces a belief in those dealing with defendant that they are dealing with plaintiff, such use constitutes misrepresentation; (3) the test in determining whether to enjoin the use of a corporate name is whether the resemblance tends to produce confusion and consequent damages.

Plaintiff has made out its case and is entitled to the relief sought.

Judgment for plaintiff, with costs; counterclaim dismissed. Submit, on notice, decision and judgment.