In the Matter of DUNKIN' DONUTS OF AMERICA, INC., Respondent, against DUNKIN DONUTS, INC., et al., Appellants.

Third Department, June 17, 1959.

*Ungerman & Greenberg* for Jack J. Kessler, appellant.

*Samuel D. Cooper* for Dunkin Donuts, Inc., and others, appellants.

*Murphy, Aldrich, Guy, Broderick & Simon (Morris Simon* and *Bernard Simon* of counsel), for respondent.

HERLIHY, J. The salient facts contained in the petition demonstrate that the petitioner was incorporated under the name "Dunkin' Donuts of America, Inc." in the State of Massachusetts and that it filed its trade mark therein and thereafter in the States of Connecticut, Rhode Island, New Jersey and in New York State on November 21, 1957, in compliance with article 24 of the General Business Law of the State of New York, receiving from the Secretary of State a certificate which is known as Exhibit "C" in the record. The name signifies the purpose of the corporation and the trade name was primarily for the sale of doughnuts. Petitioner developed a box and paper bag of unusual design for the sale of its product, containing such descriptions as "52 Delicious Varieties" and "The Donut With A Handle On It". It is further shown that the petitioner had stores in the States designated above and the filing of the trade mark in New York State in 1957 was in anticipation of a sales campaign to start business in this State. This is further demonstrated by an advertisement in the Albany *Times-Union* on December 12, 1957, offering franchises to people interested in investing in the business.

The appellants incorporated under corporate appellant's name in New York State on April 17, 1958 — four months following the *Times-Union* advertisement for franchises — and in the answering affidavits of the appellants the only explanation for the similarity of names is offered by one Stanley Uzdavinis, the president of the corporation, formerly from Lynn, Massachusetts, admittedly familiar with the name and business of the petitioner. In a conference with his partner prior to

incorporation he suggested the name "Donut Time" which name was not satisfactory to his partner who suggested the name "Dunkin Donuts". The affidavit further states that although the signer thereof had knowledge of the use of the name in the State of Massachusetts — he did not like its product — he had an attorney, one of the incorporators, make a search of the Secretary of State's Office, Corporate Division, and upon its approval thereafter incorporated. He made the further statement: "We have never in any way intended or tried to palm ourselves off as being connected or affiliated with the petitioner's organization. As I said before, our intention was actually just the opposite; I felt our doughnuts were better than petitioner's doughnuts and that we would suffer if the public thought our doughnuts were the same as theirs." If there is any logic to this statement, the conclusion must be "Then why use the name?". Early in 1958 petitioner notified appellants to cease using its name. No plausible explanation was offered in the answering or reply affidavits as to the reason for the use of "The Donut With A Handle On It" or "With 52 Varieties Of Hand Cut" [donuts] which appear in the window of a store in the City of Troy, New York, as shown by Exhibit "H".

To invoke the summary judgment, without trial, under section 964 of the Penal Law, the evidence of the petitioner must be clear and convincing and not substantially controverted by way of answer or reply. It is similar to the requirements of rule 113 of the Rules of Civil Practice entitled "Summary judgment".

The statute provides in part "No * * * corporation shall, with intent to deceive or mislead the public, assume, adopt or use as * * * a corporate, assumed or trade name, for advertising purposes or for the purposes of trade or for any other purpose, any name * * * or any symbol or simulation * * * or a part of any name * * * which may deceive or mislead the public as to the identity of such * * * corporation or as to the connection of * * * corporation * * * with any other person, firm or corporation".

We are not concerned with the criminal aspect of the statute.

While it would appear that the intent of the statute is for the protection of the public, the Court of Appeals has indicated it may be used as a summary remedy for unfair competition and for trade-mark infringements for the protection of a private property interest as well as the public generally. In *Matter of Playland Corp.* v. *Playland Center* (1 N Y 2d 300) where there

was a similarity of names and identical trade-mark, the court said (p. 303) with reference to the summary proceedings: "No material injury need be shown, the statute explicitly allowing the court to grant an injunction 'without requiring proof that any person has in fact been deceived or misled'". And again at page 305: "The attempt to usurp the established name and symbol of a competitor afforded more than ample warrant for Special Term's order granting the injunction provided for by section 964 of the Penal Law." While the case is not in point as to the facts, there is similarity as to the purpose and intent of the parties usurping the name. As was stated by the court in *Association of Contr. Plumbers of City of New York* v. *Contracting Plumbers Assn. of Brooklyn & Queens* (302 N. Y. 495) at page 498: "When the Legislature enacted section 964 of the Penal Law, it provided a new and summary proceeding not heretofore available by which an aggrieved party in a proper case, could obtain speedy and drastic relief without the delays incident to a plenary action * * * requires that it be invoked only when the right thereto is established in a clear and convincing manner." And again at page 501: "The wrong is in the use with intent. When that is established a case for summary relief is made out." It has been said before and is worthy of repetition here: "If the defendant intends to deal fairly, it can do no harm to change its name; if it intends to use the name unfairly, it should be compelled to change it." (*British-American Tobacco Co.* v. *British-American Cigar Stores*, 211 F. 933, 935.)

The word "Donut" alone might well be descriptive of the type of business and therefore available to the public but the combining of the words "Dunkin' Donuts" and the corporate name adopted by the appellants has such a similarity — phonetic spelling and pronounciation — that the inescapable conclusion is that the appellants were attempting to deceive the public and do irreparable damage to the petitioner. The coinage of the words is patently a trade name and so designated by the proper authorities of the State of New York.

Appellants further contend that the name has acquired no "secondary meaning" in the Capital District area as to petitioner. Such proof is not essential to the success of a motion under the section herein. It is important to again note that petitioner had taken affirmative action to introduce the name in the area, of which the appellants had knowledge. The mere fact that another uses the same name in the same general area and in the same business certainly creates a probability of deception without having to decide who has, if anyone, a prop-

232

erty right to the name. The answer and the reply affidavits of the appellants in no way refute the charges of deceit and intent to mislead. The record is crystal clear — the explanation offered by the appellants notwithstanding — that the appellant corporation knowingly took the name to take advantage of the petitioner's reputation and to deceive the public as to the identity of the corporation, therefore making it (to the public) misleading and confusing.

Appellants make a further issue that the petitioner, a foreign corporation, not qualified at the time to do business in New York, is barred from invoking the jurisdiction of our courts under section 218 of the General Corporation Law. That section is limited strictly to an action of contract and not controlling herein. Neither is the fact that appellants have filed a certificate of incorporation a defense. (*Pansy Waist Co.*, v. *Pansy Dress Co.*, 203 App. Div. 585; *Hoevel Sandblast Mach. Co.* v. *Hoevel*, 167 App. Div. 548, 549; *National Tool Salvage Co.* v. *National Tool Salvage Industries*, 186 Misc. 833.)

While the relief granted herein is harsh and severe, it contemplates such situation as here present.

The order should be affirmed.

FOSTER, P. J., BERGAN, COON and REYNOLDS, JJ., concur.

Order affirmed, with $10 costs.