ASSOCIATION OF CONTRACTING PLUMBERS OF THE CITY OF NEW YORK, INC., Respondent, *v.* CONTRACTING PLUMBERS ASSOCIATION OF BROOKLYN AND QUEENS, INC., Appellant.

Argued January 11, 1951; decided June 1, 1951.

*Harold Dublirer* and *A. E. Robert Friedman* for appellant. I. Relief under section 964 of the Penal Law should be denied because defendant is a noncommercial organization and there was no intent to deceive or mislead the public. (*Overseas News Agency* v. *Overseas Press,* 185 Misc. 1010, 270 App. Div. 754; *Matter of Overseas News Agency* v. *Overseas Press,* 183 Misc. 40, 268 App. Div. 856; *Bristor* v. *Smith,* 158 N. Y. 157; *Matter of Julius Restaurant* v. *Lombardi,* 282 N. Y. 126; *Matter of Brennan* v. *Mahoney,* 165 Misc. 276, 252 App. Div. 741; *Matter of Pignatelli* v. *Pignatelli,* 175 Misc. 139; *Montalti* v. *Montelione,* 72 N. Y. S. 2d 879.) II. There was no proof of any intent to deceive or mislead the public. (*Matter of Overseas News Agency* v. *Overseas Press,* 183 Misc. 40.)

*Abraham Wilson* and *Elliot A. Wysor* for respondent. I. Relief under section 964 of the Penal Law was properly extended to respondent membership corporation trade association against its competitor, appellant membership corporation trade association. (*Matter of Julius Restaurant* v. *Lombardi,* 257 App. Div. 370; *Matter of Fainblatt* v. *Leo Sportswear Co.,* 178 Misc. 760; *Matter of Bill's Gay Nineties, Inc.,* v. *Fisher,* 180 Misc. 721; *Campus Coat Co.* v. *Campus Togs, Inc.,* 177 Misc. 893; *Cape May Yacht Club* v. *Cape May Yacht & Country Club,* 81 N. J. Eq. 454; *Vick Medicine Co.* v. *Vick Chemical Co.,* 11 F. 2d 33.) II. By application of the common law of unfair competition in the use of corporate names, as nonprofit membership corporations, appellant is subject to, and respondent is entitled to, the protection of the civil portion of the statute. (*B. P. O. E.* v. *Improved B. P. O. E.,* 205 N. Y. 459; *Salvation Army in U. S.* v. *American Salvation Army,* 141 App. Div. 931, 205 N. Y. 619; *Society of War of 1812* v. *Society of War of 1812 in State of N. Y.,* 46 App. Div. 568; *Brooklyn Bar Assn.* v. *Kings Co. Bar Assn.,* 174 Misc. 997; *Town Hall, Inc.,* v. *Franklin,* 174 Misc. 17; *New York World's Fair 1939 Inc.* v. *World's Fair News, Inc.,* 163 Misc. 661, 256 App. Div. 373, 280 N. Y. 853; *Trustees of Columbia Univ.* v. *Axenfeld,* 136 Misc. 831.) III. Appellant's imitative intent and deliberate deceptive use of its name to compete with respondent, established by the uncontroverted facts, amply justified the lower court's exercise of discretionary power under section 964 of the Penal Law to grant injunctive

relief summarily to respondent. On the uncontroverted facts here, a plenary action could not have produced any different disposition. (*International Com. of Y. W. C. A.* v. *Y. W. C. A.,* 194 Ill. 194; *Societa, etc., Christoforo Colombo* v. *Lombardo,* 350 Pa. 530; *Liberty Life Assur. Soc.* v. *Heralds of Liberty,* 138 A. 634.)

DYE, J. The question presented on this appeal concerns the measure of proof required to justify the summary remedy provided by section 964 of the Penal Law (L. 1937, ch. 638). It turns on whether an order granted on affidavits alone, without a trial, permanently restraining and enjoining the appellant-respondent from the use of the name " Contracting Plumbers Association of Brooklyn and Queens, Inc." and particularly the words " Contracting Plumbers Association " either alone or in conjunction with other words, was justified.

We think not. When the Legislature enacted section 964 of the Penal Law, it provided a new and summary proceeding not heretofore available by which an aggrieved party in a proper case, could obtain speedy and drastic relief without the delays incident to a plenary action (*Matter of Julius Restaurant* v. *Lombardi,* 282 N. Y. 126). This is not to say, however, that compliance with basic evidentiary rules may be dispensed with. The very nature of the remedy — a permanent injunction — to be had without a trial on affidavits alone — requires that it be invoked only when the right thereto is established in a clear and convincing manner. Where basic factual allegations of violation are controverted summary relief may be denied (*Matter of Alexander's Dept. Stores* v. *Cohen,* 269 App. Div. 117, revd. 295 N. Y. 557).

Both parties hereto are local nonprofit trade associations incorporated under section 2 of the New York State Membership Corporations Law (L. 1926, ch. 722, as amd.), for the purpose of promoting the interest and welfare of their members in the plumbing business and with other trade associations in the plumbing business. In practice, however, the principal activity is in the field of labor relations and acting as collective bargaining agent in the negotiation, making and supervision of employment contracts with local trade unions.

The petitioner-appellant, as presently constituted, was originally organized in 1900 as an unincorporated association of master plumbers, its members being drawn from and its activities covering all parts of New York City, including the boroughs of Brooklyn and Queens. In 1939, it incorporated with no change of name except the addition of the abbreviation " Inc." In 1942, without change of name, it absorbed by consolidation another trade association of master plumbers which had been incorporated under the Membership Corporations Law in about 1881 as " Association of Master Plumbers of the City of New York," its name being changed in 1908 by the addition of the words " Manhattan Branch ". In 1946, the petitioner was chartered as an affiliate by the New York State Association of Master Plumbers and also chartered as an affiliate of the National Association of Master Plumbers. Thereafter dissension developed among certain of its officers and members culminating in the withdrawal of the dissenting group who organized themselves and others as a trade association under the Membership Corporations Law, the certificate being filed with the Secretary of State, July 12, 1948, under the name in controversy.

The petition also alleges that its members perform a considerable portion of all plumbing work done in New York City; that it is recognized as the collective bargaining agent for the plumbing industry by the building trade employers' association of New York City; that it is the collective bargaining agent in a contract with Local Union No. 1 of the United Journeymen, Plumbers, Gas Fitters and Apprentices of the United States and Canada and that it shares in the administration of a welfare fund established under such agreement.

The petitioner alleges that by use in its name by the respondent of the words " Contracting Plumbers Association " it has appropriated and intends to appropriate in substantial part the name, good will and prestige of petitioner and thereby create the impression that it is a branch or an affiliate of the petitioner and that such action on its part " tends to mislead and deceive the public " particularly in the building industry.

The opposing affidavits generally deny any such intent or purpose and, on the contrary, allege circumstances which it is claimed show its good faith and a right to use its name. That in the first instance it had submitted the name " Brooklyn and

Queens Master Plumbers Association, Inc." which the Secretary of State had rejected because of conflict with the name of an existing association; that it limits its membership and activities to master plumbers doing business in Brooklyn and Queens. It is also chartered as an affiliate of the New York State association under the controverted name. That at all times it has maintained an office in Brooklyn and conducted its affairs under such name and title. Statistics are also developed which indicate, superficially at least, that the petitioner's membership does not in fact perform a considerable portion of the plumbing work in the city; that of the 3,100 licensed master plumbers in New York City only 90 are currently members of the city association while of the 1,400 licensed plumbing contractors in Brooklyn and Queens, 67 are members of appellant association and only 4 are members of the city association.

The threshold question as to the availability of section 964 in a nonprofit trade association dispute as distinguished from commercial or trading corporations finds its answer in the initial words of the statute declaring: " *No* * * * *corporation shall* * * * *use as* * * * *a corporate* * * * *name,* for advertising purposes, or * * * *for any other purpose, any name* * * * which may deceive or mislead the public ". (Emphasis supplied.)

Legislative intent is best gathered by according the language employed its usual and ordinary meaning. When so read the generality of the language here employed is broad enough to include both parties. The statute creates no new legal principle — at common law equity afforded a remedy for misuse of name in unfair competition which was not confined to commercial disputes. It included nonprofit corporations (*B. P. O. E.* v. *Improved B. P. O. E.,* 205 N. Y. 459, 464; *National Circle, Daughters of Isabella* v. *National Order of Daughters of Isabella,* 270 F. 723). The parties here even though organized as nonprofit trade associations, are in a sense competitors, serving as they do a membership of licensed plumbers (cf. *International News Service* v. *Associated Press,* 248 U. S. 215).

In reaching this conclusion we have not overlooked certain lower court decisions which gave the impression without so ruling, that the statutory remedy was limited to cases involving commercial fraud (*Matter of Hirsch* v. *Perlman,* 268 App. Div.

1035; *Matter of Overseas News Agency* v. *Overseas Press,* 183 Misc. 40, affd. 268 App. Div. 856; *Matter of Pignatelli* v. *Pignatelli,* 175 Misc. 139). Our decision in *Matter of Julius Restaurant* v. *Lombardi* (*supra*) is not to the contrary for there we considered only the procedural question.

The proof here, as we view it, falls far short of the expressed showing that the words " Contracting Plumbers Association " as used are violative of section 964.

The statute so far as pertinent, provides: " No   *   *   * corporation shall, *with intent to deceive or mislead* the public, asume, adopt or use as   *   *   * a corporate   *   *   * name, for advertising purposes, or for the purposes of trade, or for any other purpose, any name   *   *   * or a part of any name *   *   * which may deceive or mislead the public as to the identity of such   *   *   * corporation or as to the connection of such   *   *   * corporation with any other   *   *   * corporation ". (Emphasis supplied.)

This, like many other legislative enactments, must be considered as a comprehensive effort to deal with the consequences of a single act either as a criminal offense or a civil wrong, depending upon its public impact. Severability depends upon circumstances but the substantive definition is equally applicable to either situation which is, " No   *   *   * corporation shall, with intent to deceive or mislead the public   *   *   * use *   *   * a   *   *   * name ". The significance and importance of this essential element is not extinguished by the latter provision that " an injunction may be issued   *   *   * without requiring proof that any person has in fact been deceived or misled thereby." This latter provision is meaningless when lifted out of context. It must be read as part of the whole and when so read it becomes crystal clear why proof " that any person has in fact been deceived or misled thereby " is dispensed with. The wrong is in the use with intent. When that is established a case for summary relief is made out. Here the proof falls short of such a showing. In fact the answering affidavits tend to show the contrary.

The controverted name had the approval of the Secretary of State, the State and National Association of Master Plumbers, together with a large segment of the plumbing industry doing business in the boroughs of Brooklyn and Queens. It appears

also that the use of the phrases " Association of Contracting Plumbers " or " Contracting Plumbers Association " is nation-wide and that the national organization is encouraging the use of such phrases by all groups affiliated with it.  Such words are of widespread and common usage in the plumbing trade.  Under such circumstances no secondary meaning may be acquired.  The petitioner, notwithstanding its prior organization, has no monopoly on the use of such terms.  The very use of the terms in connection with New York City, Brooklyn and Queens indicates a separate and distinct entity and it is unreasonable to assume, without clear proof, that in such use the respondent-appellant intended to mislead or deceive any member of either association or any labor union with whom they bargain collectively or any trade association in the building industry particularly when its membership and activities are confined to geographical limits, and neither has any dealings with the general public as such.  Section 964 is drastic in scope and content.  The summary relief authorized should be invoked only when there is conclusive evidence of intent " to deceive and mislead the public ".

The orders should be reversed and the petition dismissed, without costs, and without prejudice to the commencement of an appropriate action in equity.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, FULD and FROESSEL, JJ., concur.

Orders reversed, etc.