In the Matter of RAYCO MFG. Co. et al., Petitioners, against LAYCO AUTO SEAT COVER CENTER, INC., et al., Respondents.

Supreme Court, Special Term, Bronx County, March 23, 1954.

*Edward L. Dubroff* for petitioners.

*Kronhart & Kronhart* for respondents.

MATTHEW M. LEVY, J.   Section 964 of the Penal Law is a hybrid statute.   Roughly condensed, this legislative enactment has made it a misdemeanor for one — with intent to deceive or mislead the public — to use the name, designation or style of any other person, firm or corporation (or any symbol or simulation thereof) when such use may deceive or mislead the public as to

the identity or connection of the user. In addition, the section further provides that '' Whenever there shall be an actual or threatened violation of this section, an application may be made to a court or justice having jurisdiction to issue an injunction, upon notice to the defendant of not less than five days, to enjoin and restrain said actual or threatened violation; and if it shall appear to the satisfaction of the court or justice that the defendant is in fact assuming, adopting or using such name, or is about to assume, adopt or use such name, and that the assumption, adoption or use of such name may deceive or mislead the public, an injunction may be issued by said court or justice, enjoining and restraining such actual or threatened violation without requiring proof that any person has in fact been deceived or misled thereby ''. Invoking the civil remedy afforded by the statute, the petitioners, Rayco Mfg. Co. and Rayco Bronx, Inc., bring this proceeding to enjoin the respondents, Layco Auto Seat Cover Center, Inc., and Lee Geber, its president, from using the name '' Layco '', or any other simulation or approximation thereof in connection with their business.

The petitioner Rayco Mfg. Co. was organized as a New Jersey corporation in 1945. It is engaged in the business of manufacturing automobile seat covers and automobile convertible tops, and of selling the same to approximately eighty franchised dealers and distributors in about thirty States. The name '' Rayco '' has been used in connection with its products since its incorporation, and in 1952 it received a trade-mark certificate. Almost $1,900,000 has been spent in advertising its products in newspapers, radio and television, and its sales for the year 1953 are estimated to have exceeded $8,000,000. The other petitioner, Rayco Bronx, Inc. (a New York corporation), is a franchised dealer and distributor of Rayco Mfg. Co., selling the products manufactured by that petitioner, and featuring the name '' Rayco '' in the sale of such products. Rayco Bronx, Inc., was incorporated in 1949. Since then it has had its store in the borough of the Bronx, in the city of New York.

The guiding spirit behind Layco Auto Seat Cover Center, Inc., is the individual respondent, one Lee Geber, who was employed by the petitioner Rayco Mfg. Co. as a field representative from September, 1950, to November, 1952. In July, 1953, Geber incorporated Layco under the laws of this State, and it too is in the business of selling and installing automobile seat covers and automobile convertible tops. Its store is also located in The Bronx, within a few miles of the store of Rayco Bronx, Inc.,

and of other franchised dealers and distributors of the petitoner Rayco Mfg. Co., all of whom feature the same signs, displays, and slogans on their store fronts. As a former Rayco employee Geber obviously knew of the prominence of the name " Rayco " long before the incorporation of his own company, and knew too of its advertising value. Geber gives three unrelated explanations of his choice of " Layco " as the first name of his corporation. He says that the nature of his business is that of " laying covers " on automobiles, and that what he did was to take the first three letters of " laying " and the first two of " cover " and thus was born the name " Layco ". He further states that the name he chose was appropriate because he sells " Lako " convertible automobile tops. And he also alleges that his first name is not " Lee " — as he was sued and as he signs and swears to his affidavit without objection — but " Leo ", and that he conceived " Layco " by using the first and last letters of his first name.

The advertising signs used by the respondents at their store are strikingly similar to those employed by the petitioners. For example, " Layco " is in almost identical distinctive design as " Rayco ". The words " auto seat covers " appear in related juxtaposition and in large bold print in both instances (except that in the case of " Layco " the word " cover " is in the singular, while in the case of " Rayco " it is in the plural). The other phrase which is featured in the signs is " Installed Free In 30 Minutes ", and this phrase too is set up in almost identical fashion, even to the point where the only word which is in script is the word " free " (except that in the Layco sign it is also underlined). The respondents do not sell any Rayco products. They do handle " Howard Zink " seat covers — but the name of this supplier as printed on the respondents' store signs is significantly minimized. They also sell " Lako " convertible automobile tops — but the name or style of this concern is not given display at all.

I have no doubt that the name, signs, legends and forms adopted by the respondents intentionally and deliberately simulate the petitioners' established name, displays, designs and slogans. Under the express provisions of the statute no proof is required that any person has in fact been deceived or misled, though some proof has been presented (by affidavit) that there has been confusion in the minds of some members of the public with respect to who is operating the respective stores of the parties.

Because the relief here sought is so summary and sweeping, I have carefully examined not only all of the decisions cited by the respondents in opposition to the application, but other precedents as well. I am strongly persuaded that if an injunction is not to be granted here, the civil remedy created by the section is not ever to be utilized — unless perhaps there has been a prior conviction under the penal provisions of the section. But that, it seems to me, is obviously not the intent of the Legislature. That is certainly not expressly provided for, and it is clear from a reading of the statute that it was not intended that the summary remedy on the civil side await disposition of the charge in the criminal courts. " Clearly the scheme of the statute is to create two avenues whereby the evil which it denounces may be reached. *First,* those charged with the enforcement of the criminal law may prosecute the offender as a criminal. *Second,* the aggrieved individual may have speedy relief on the civil side by the preventive device of an injunction." (*Matter of Julius Restaurant* v. *Lombardi,* 282 N. Y. 126, 129.)

Doubtless, in a statutory proceeding such as this — as distinguished from the normal action in equity — mere priority of use, however extensive, is insufficient upon which to enjoin infringement or unfair competition. But, while the statute is in part criminal — and in a criminal prosecution under it, guilt must of course be proved beyond a reasonable doubt — that is not the measure of proof, where, as here, the civil phase of the section is invoked (*Matter of Overseas News Agency* v. *Overseas Press,* 183 Misc. 40, affd. 268 App. Div. 856). There must be — but it is sufficient if there be — " conclusive evidence of intent ' to deceive and mislead the public ' " (*Association of Contr. Plumbers of City of N. Y.* v. *Contracting Plumbers Assn. of Brooklyn & Queens,* 302 N. Y. 495, 502). And any particular situation must be taken as a whole in order to determine whether or not the injunction should be issued (cf. *Oakite Products* v. *Boritz,* 161 Misc. 807). A finding of the requisite " intent " is certainly not dependent upon confession or concession. The state of mind required to be proved may, with at least equal assurance, be adequately ascertained from objective facts. In the instant case, the extrinsic circumstances (each of which may or may not be insufficient on its own) all unite to compel a finding of guilty intent — prior association, knowledge, motive, unusual similarity of first word in corporate name, competitive businesses, striking identity of trade slogans (both in language and style), proximity of store locations, the de-emphasis on the

respondents' store-front sign of other products sold by them, tortuous explanations in justification, etc.

The appellate courts have seldom been called upon to pass upon factual controversies in these cases, but a number has been passed upon at Special Term. In *Atlas Corp.* v. *Atlas Investing Corp.* (98 N. Y. S. 2d 60); *Seltzer* v. *Flannagan* (99 N. Y. S. 2d 649); *Montalti* v. *Montelione* (72 N. Y. S. 2d 879); *Wilma Gowns* v. *Wilma Juniors* (82 N. Y. S. 2d 119) and *Matter of Fainblatt* v. *Leo Sportswear Co.* (178 Misc. 760), the injunction requested was granted. In view of the conclusion which I have reached, I shall do no more than cite, as I have, the authorities in support of my view. But I shall endeavor to analyze those cases where it has been held that the civil proceeding under section 964 was not in such cases an available remedy. Each of them, in my opinion, is distinguishable on the facts from the instant case.

Thus, in *Central Greyhound Lines of N. Y.* v. *Greyhound Cab Corp.* (81 N. Y. S. 2d 416), the petitioner was engaged in the business of transporting, by bus, passengers throughout New York, and adjacent States, whereas the respondent was engaged in a general taxicab business transporting persons in New York City. The taxicabs were painted with orange fenders and a cream body, carried a small insignia of the Empire State Building and wings, and the name '' Greyhound Cab Corp.'' appeared on the rear door in letters two inches high. The petitioner's color scheme was silver and blue, with the insignia of a leaping greyhound. The court pointed out (p. 419) that a motor bus has a fixed route on the streets in which it operates, whereas a taxicab does not; and, further, that a customer hails a taxicab because it is available, whereas in the case of a bus one has to go to the terminal and select the particular bus on which he desires to ride. Surely, this case is not helpful to the respondents at bar, where the signs are so similar and the businesses in sharp competition. Another case where the application was denied is *Club Iceland* v. *Iceland Restaurant Corp.* (29 N. Y. S. 2d 913). There the petitioner conducted an ice-skating rink, and as an adjunct maintained a restaurant for the convenience of the skaters primarily. The respondent conducted a restaurant only. The court said at page 914: '' There is no proof of any similarity as to the type of restaurant operated by these litigants, and it would seem improbable that one establishment could be mistaken for the other.''

While some of the language of the opinion in *Matter of Julius Restaurant* v. *Lombardi* (174 Misc. 875, *supra*), appears to be in disagreement with my views, the facts of that case justify the learned court's conclusion. The respondent used his own name, " Julius ", in the operation of his restaurant. He had established his caravansary prior to the time when the petitioner had opened its business, and was generally known as " Julius " to his patrons. The respondent was not charged with having assumed the name of " Julius " as part of his corporate name. As the court pointed out, at page 877, " Ordinarily a person may freely use his name for any lawful purpose and this regardless of others who may bear the same name. * * * Conspicuously absent is any evidence of intent on respondent's part to mislead the public. Though there may be competition between these litigants, and of this there is grave doubt, it nevertheless does not grow out of any criminal fraud on respondent's part."

In *Matter of Schenne* v. *Benson* (178 Misc. 301), the court denied the petitioner's application to enjoin respondent from continuing the business of a bar and restaurant under any name in which the word " Dog " is used. The petitioner in the spring of 1941, purchased a business from the respondent, including the registered name of " Dog Bar ". The petitioner used the name " Dog ", which has since been identified with its business. In connection with the sale of the business to the petitioner, the respondent agreed not to enter into a similar business within a radius of fifteen miles for a period of five years. In the fall of 1941, the respondent opened a bar known as " The Dog " at a place located some seventeen miles from the one he sold to the petitioner. The petitioner's bar was in a small hamlet, while respondent's was located in the downtown section of the city of Buffalo. The court, in denying the application, stated, at page 304, that " If defendant's new place of business was in close proximity to his former business, it might appear clear that such was his intention " — that is, to deceive or mislead the public — but, because of the distances between the two places of business, and the fact that one was located in a large city and the other in a small country town, the court denied the application. In the case before me the respondents have their store in The Bronx, as does one of the petitioners, and the distance between the two stores is just several metropolitan miles. And, since petitioners do business in some thirty States (including New York State and New York City), it may well be that customers from distant

communities may confuse respondents' store with those owned or franchised by the petitioners.

*Association of Contr. Plumbers of City of N. Y.* v. *Contracting Plumbers Assn. of Brooklyn & Queens* (302 N. Y. 495, *supra*), is a case where it is quite clear that there was no intent to deceive or mislead. In the first place, the respondent had submitted another corporate name for approval by the Secretary of State, but it was rejected because of conflict with that of an existing association. The name now attacked had the approval of a large segment of the plumbing industry doing business in the Borough of Brooklyn and Queens. The use of the phrases "Association of Contracting Plumbers" or "Contracting Plumbers Association" was nationwide and the national organization was encouraging the use of such phrases by all groups affiliated with it. As the court said, at page 502, "The very use of the terms in connection with New York City, Brooklyn and Queens indicates a separate and distinct entity and it is unreasonable to assume, without clear proof, that in such use the respondent-appellant intended to mislead or deceive any member of either association". In short, the court found that the name adopted by the petitioner had acquired no secondary meaning and it had no monopoly on the use of its name, and that there was no intent to deceive on the part of the respondent.

In *Matter of Murray* v. *Roedel* (196 Misc. 233), the petitioner (whose status or interest does not appear from the opinion) sought to enjoin the respondent from conducting the business of teaching dancing in Albany, New York, under the name "The Arthur Murray School of Dancing", because, as claimed by the petitioner, the public could not really receive personal instruction from Arthur Murray himself, whose name in the dancing world was alleged to be known by all, and that therefore there was clearly an intent to deceive and a likelihood of deception. The court said, at page 236, "It is more reasonable to think that he (a member of the public) would expect to receive instruction in a particular method of dancing invented by a person of that name (Arthur Murray) and taught by instructors trained in his method." Obviously, there was no evidence that the respondent intended to deceive or that the public could be misled.

In *Matter of Overseas News Agency* v. *Overseas Press* (183 Misc. 40, affd. 268 App. Div. 856, *supra*), the petitioner was using the name "Overseas News Agency" for four years in connection with its business of disseminating news and feature articles,

and attempted to enjoin the respondents from using the name " Overseas " in connection with their business — which was that of gathering feature articles but not news. The court held that the name " Overseas " was a geographical term which described the nature of the business. Also, the court said, at page 43, that " The parties are not really engaged in dealing with the public; at least, not in the usual way in which a deception may occur, where competitors in a wholesale or retail business are selling goods or services to the public. * * * Persons either contributing articles to or buying articles from the parties would be influenced by personal contacts and arrangements and by the merits of the articles rather than by the name of the agency." In the case of Rayco and Layco, on the other hand, there is no question but that the parties are directly and sharply in competition, and that they are competitors selling goods to the public.

In *Matter of Agash Refining Corp.* v. *Gash* (182 Misc. 309), Abraham Gash established a business in 1903. It became bankrupt, and petitioner — Agash Refining Corporation — acquired the assets in 1942, and has continued the operation of the business. In 1943, Abraham Gash entered into a new business under the name of A. Gash & Company, and after his death that business was continued by his sons, who were the respondents. The court, in denying petitioner's application for an injunction pointed out, at page 310, that the business of respondents was materially different from that of the petitioner, and thus, that they were not competitiors. The court also found that the assumption of the name " A. Gash & Company " by the respondents was in good faith.

There are probably other relevant facts or material grounds of differentiation between the cases relied upon by the respondents and those presented to me in the instant controversy, but I think I have pointed out the salient distinctive features — and I have extended this opinion beyond what I hope is necessary, and certainly beyond what I had intended or now desire.

No doubt, I suppose, I could certainly direct the taking of testimony in aid of the application under section 964 (*Matter of Agash Refining Corp.* v. *Gash, supra,* p. 311). Or, I might postpone the day of inescapable judgment by dismissing the proceeding without prejudice to the institution of an action in equity to restrain the respondents from the use of the word " Layco " in the conduct or advertising of their business, or of any simulation of the word " Rayco " for that purpose (cf. *Matter of*

*Schenne* v. *Benson,* 178 Misc. 301, 305). But I have come to the considered conclusion that the respondents should promptly refrain from the use of the name " Layco ", and of any name, designation or symbol similar to " Rayco ", and that an injunction should issue accordingly. That does not, as claimed by the respondents, involve putting them out of business, but simply compels them to conduct their business with some regard to appropriate business ethics — at least to the extent of not simulating the established name and slogan of a competitor, and of not doing so with intent to deceive and mislead the public. That — no more and no less — is the purpose and function of the statute. And, since the respondents have only comparatively recently embarked upon their venture, I quote, as quite apposite, what the Court of Appeals said in *Matter of Julius Restaurant* v. *Lombardi* (282 N. Y. 126, 129, *supra*), " Generally, a wrong prevented results in better justice than an attempted cure." The sooner this wrong is ended, the less damage will result to both of the contending parties, and to the public.