Irving H. Saypol, J.
This is an equity action to restrain the use of such words as “Democratic Organization”, “Democrat ”, “ Executive Member ”, alone, or in combination with the word “ Regular ”, or any symbol of the Democratic party. The complaint, in two causes of action, alleges first that in spite of notice and demand to desist, the defendants use, display and circulate deceptively such words and symbols, including the defendant corporation’s name and that such conduct violates the regulations of the parent Democratic County Committee. The second cause of action repleads the first and then alleges, as admitted by the answer, the incorporation of the Robert B. Blaikie Regular Democratic Organization, Inc., in 1945 when defendant Robert B. Blaikie was the incumbent executive member of the local Democratic district organization. Such incorporation was with the consent of the county chairman (Membership Corporations Law, § 10, subd. 7) among the expressed corporate objectives being the advancement of the principles of the Democratic party. It is then put in issue that *239 on March 12,1954, by letter of the county chairman the hitherto expressed consent was revoked and demand made for cessation of the use of the name as misleading and confusing, which the defendants ignored. The defendants are charged with disloyalty to the party in that political support was given to candidates running on opposing slates.
The complaint has withstood preliminary attack, as has the temporary order which issued, enjoining the defendants, until the trial, (1) from using (a) the word “ regular ” in the corporate name or otherwise, or (b) the symbol of a star or (c) the words “7th Assembly District” on their signs, in their correspondence or in other activities, and (2) from characterizing the individual defendants as “executive members ”. The defendants were temporarily allowed the use of the corporate name with the word “ regular” omitted and in view of the political history of the defendants they were allowed to use the word “ Democratic ”. (134 N. Y. S. 2d 439, Schreiber, J., affd. 283 App. Div. 1014.)
The evidence received on the plaintiffs’ case, the defendants resting thereon, came from witnesses Sheldrick and Blaikie and from various documents.
The facts as found after trial show that plaintiff corporation is the duly designated regular democratic organization of the 7th Assembly District, New York County. Sheldrick and Novod are the duly qualified executive members of that political party consequent upon the success of their adherents at the primary election held on September 15,1953. Knott having died, he was succeeded as county chairman by Frank Eosetti. Blaikie and McGowan, quondam executive members, having been dethroned as a result of the election, no longer executive members, have nevertheless continued their political activities utilizing the defendant Eobert B. Blaikie Begular Democratic Organization, Inc., as their rallying vehicle for a place of forum, to hold together their adherents, as well as may be, and perhaps to entice new followers. Blaikie professed little knowledge of the inner workings of the organization bearing his name, disclaimed control of its functions, was vague about its officers, their number and identity, and in fact on the question of the composition of the directorate the court was treated to the novelty of observing a spectator, later identified as one of the directorate, prompting the witness by show of all the fingers of both hands, I am not sure whether in one or two vigorous shakes, to indicate a board of 10 or 20 members. Blaikie admitted support of opposing candidates in recent elections, including the last when he supported the mayoralty candidate of another political party *240 and opposed the candidate of his own Democratic party. A sign bearing the disputed corporate name was taken down after the primary election but recently restored across the organization’s building facade. Various documents in evidence include a letter bearing the facsimile signature of Blaikie announcing a meeting to be held on April 30,1954, an envelope with a postal cancellation stamp dated March 29, 1954, a membership card of the corporation and a ticket for a reception and dance of the organization; all display in bold type the corporate name ‘‘ Robert B. Blaikie Regular Democratic'Organization, Inc.” The letterhead and the membership card also bear the names of Blaikie and McGowan over the identifying legend “ Executive Members ” and the acknowledged official emblem of the Democratic party, the five-pointed star.
The defendant’s position is that the incorporation in 1945 of the defendant as sanctioned by the county chairman leaves it impregnable, that the name may not be changed except in quo warranto at the suit of the State and not by a private party and that the defendants may not be restrained in the use of the generic word “democrat”, they undeniably being Democrats. In that latter regard, I may notice judicially that Blaikie is the duly elected member in office of the Democratic State Committee for the 7th Assembly District.
Although the Membership Corporations Law provides in subdivision 7 of section 10 for consent of the county chairman of a political party to the filing of a certificate bearing the name of that party, yet the statute is silent on the subject of withdrawing such consent. In such circumstances, inequitable use of the acquired name may be perilous to the user. (Cf. American Order of Scottish Clans v. Merrill, 151 Mass. 558.) The Legislature has recognized the need to prevent fraudulent use of a corporate name in the enactment of section 964 of the Penal Law which makes such proscribed conduct a misdemeanor and, more significantly here, provides for a summary civil proceeding to enjoin such misconduct where there is intent to deceive or mislead the public, the injunction procurable on five days ’ notice without requiring proof that any person has in fact been deceived or misled. This section has been held to apply to misuse of corporate names regardless of the character of the corporation, even as to nonprofit and trade associations; expressly overruling prior lower court holding that the section was confined to commercial frauds. (Association of Contr. Plumbers of City of N. Y. v. Contracting Plumbers Assn. of Brooklyn & Queens, 302 N. Y. 495, 500; see Matter of Brennan v. Mahoney, 165 Misc. 276, affd. 252 App. Div. 741.) The court *241 pointed out in Association of Contr. Plumbers v. Contracting Plumbers Assn. (p. 500, supra) that “ The statute creates no new legal principle — at common law equity afforded a remedy for misuse of name in unfair competition which was not confined to commercial disputes.”
The controlling equitable principle is similarly paraphrased in Corpus Juris Secundum (Vol. 18, Corporations, § 173, n. 59, quoting 14 C. J., p. 327, n. 82): “ ‘ Principle upon which these cases rest is that, although a corporation may be legally created, it can no more use its corporate name in violation of the rights of others than an individual can use his name, legally acquired, so as to mislead the public and to injure another. The principle adopted is similar to that of a trade name or trade mark, and is applied accordingly. Consequently a Court of Equity has jurisdiction in such a case, without the intervention of the State.’ ” (Armington v. Palmer, 21 R. I. 109, 113.)
Coming to the question then of the use or rather misuse of the name of the corporate defendant, one finds an apparently rightful identification misappropriated to a deceptive end — the name of a seemingly regular democratic entity diverted to the support of the candidates of its opponents, for the unwary a Trojan horse. ‘ ‘ ‘ Fraud, which the criminal statute in question seeks to punish or to prevent, is the use of a name in such a way as to deceive the public, and it is the deception or improper use of the name and not the name itself, which constitutes such fraud. ’ ” (18 C. J. S., Corporations, § 174, n. 6, quoting from People v. Rose, 219 111. 46, 63.)
The end to approach now is the applicability of the general principles to the problem at hand — the purloining of the political trade-mark, as it were. The precedents are many. Thus it has been said that:
“ Party loyalty and regularity are known to be most valuable political assets. * * * The importance of honestly expressing fact and of refraining from misrepresentation of party support or candidacy is equally clear. * * *
“ Any misrepresentation, either directly stated or indirectly made, orally or in literature or signs, through the use of misleading, confusing or deceitful statements, that a person not so chosen is a candidate of a particular party which is likely to do injury to that party or its candidates, must be regarded as fraud and deceit.” (Chambers v. Greenman Assn., 58 N. Y. S. 2d 637, 640, 641, affd. 269 App. Div. 938.)
The misuse of the words “ Regular ” and “ Democratic ” in similar situations has been reviewed and restrained in such cases as Fay v. O’Connor (169 Misc. 466, affd. 257 App. Div. 815, affd. 281 N. Y. 849) and Perilli v. Tamawa Club (172 Misc. 24).
*242 I conclude on the foregoing- facts that the defendants have in their deviation from party regularity in their support of opposing candidates, utilizing incidentally as a medium in the perpetration of a fraud on the public the name of the Robert B. Blaikie Regular Democratic Organization, Inc., committed such acts of misconduct as to warrant judicial restraint of the use of that name in its present form, and in view of their individual political retirement through defeat at the primaries they may not hold themselves out in any way as Democratic executive members, including the use incidental thereto of legends and emblems.
Judgment is directed, without costs, against the defendants, permanently enjoining them and all persons acting in their behalf or under them, as prayed for in paragraphs 1 and 2 of the ad damnum clause of the complaint, except that such restraint shall be limited as to the defendant Robert B. Blaikie in that he will be permitted to identify himself and to act as member of the Democratic State Committee.
Settle judgment on the foregoing decision, which is that within the contemplation of sections 439 and 440 of the Civil Practice Act.