Nicholas M. Pette, J.
Petitioner, pursuant to section 964 of the Penal Law, upon a petition and notice of motion, has applied to this court for an injunction to enjoin and restrain the respondent from using the name Precision Meter Co., Inc., in its business or any other simulation, derivation or approximation thereof, either alone or in conjunction with other words, in connection with the business of manufacturing meters or other electronic items, and also ordering and enjoining respondent to obliterate, delete and remove said name or any simulation thereof in or about its business, establishment, stationery, list *818 ings, telephone books, signs, advertising and wherever else the same may appear.
In addition to the affidavits submitted on this motion the court heard the arguments of counsel for both sides in open court, and at that time a list of firms, one of the respondent’s mailed circulars and one of petitioner’s brochures were handed up to the court for consideration on this motion. The respondent on such argument waived its objection to the affidavits of the petitoner sworn to outside the State and lacking the authenticating certificate required by section 359 of the Civil Practice Act and consented to the same being used and considered on this motion.
To prevent the use of the name or address of another with intent to deceive and mislead, the Legislature enacted this summary special proceeding adequate to modern needs, enabling an aggrieved party to obtain prompt and permanent relief, without the slow, cumbersome and ofttimes unsatisfactory procedure of a plenary action, with its attendant and unavoidable delays occasioned by the procedural steps available to the parties in such suit. (Matter of Fainblatt v. Leo Sportswear Co., 178 Misc. 760; Matter of Playland Holding Corp. v. Playland Center, 1 N Y 2d 300.)
Both civil and criminal remedies are provided by section 964 of the Penal Law which are capable of definite severance, the one from the other, and the purpose of the statute is to defeat and prevent conduct in the nature of commercial fraud. Eliminating the necessity of pleadings, no material injury need be shown, the statute explicitly allowing the court to grant an injunction ‘ ‘ without requiring proof that any person has in fact been deceived or misled ”. (Matter of Julius Restaurant v. Lombardi, 282 N. Y. 126, 129; Matter of Fainblatt v. Leo Sportswear Co., supra; Matter of Playland Holding Corp. v. Playland Center, supra.) The courts have been both zealous and realistic where the name sought to be protected is one of established and long standing and the usurper is a relative newcomer. And referring to the summary nature of the statute the Court of Appeals in the Julius Restaurant case (supra, pp. 129-130) said: “ Generally, a wrong prevented results in . better justice than an attempted cure. ’ ’
The statute, in its civil aspects, seeks to accomplish what the common-law civil action for an injunction to restrain unfair trade practices and unfair competition sought to do, but without the attendant formalities and delays entailed in such actions. And although this civil remedy is embodied in a penal law, the cases have held that proof only by a preponderance of the clear *819 and convincing evidence is necessary. (Matter of Playland Holding Corp., supra; Matter of Fainblatt, supra; Association of Contr. Plumbers of City of N. Y. v. Contracting Plumbers Assn., 302 N. Y. 495, 498; Matter of Rayco Mfg. Co. v. Layco Auto Seat Cover Center, 205 Misc. 827; Matter of Overseas News Agency v. Overseas Press, 183 Misc. 40, affd. 268 App. Div. 856.)
The controlling issue herein is whether the respondent by appropriating unto itself a part of the petitioner’s trade name and format has unfairly and with intent to deceive and mislead the public, particularly those engaged in the electronics field, committed a commercial fraud. (Corning Glass Works v. Corning Cut Glass Co., 197 N. Y. 173; Ball v. Broadway Bazaar, 194 N. Y. 429; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462.) It is not part of petitioner’s case that it establish an exclusive right to the name. (Kayser & Co. v. Italian Silk Underwear Co., 160 App. Div. 607.) The accent of the modern law on this subject is clearly upon whether the newcomer has sought to capitalize upon the prestige, reputation, advertising and good will of the predecessor. (Fisher v. Star Co., 231 N. Y. 414, 427; Santa’s Workshop v. Sterling, 282 App. Div. 328.)
Since this proceeding is summary in nature, the right to an injunction must be established in a clear and convincing manner. As stated by Fuld, J., in the Playland case (1 N Y 2d 300, 303, supra): ‘ ‘ That does not mean, hoioever, that the right may be defeated by a bare denial of intent to deceive or mislead the public. The proceeding ‘ will still lie where the respondent fails by affidavit to establish a true issue of fact ’, and insubstantial or incredible averments will not suffice to raise such an issue. (Matter of Industrial Plants Corp. v. Industrial Liquidating Co., 286 App. Div. 568, 572; see Matter of Alexander’s Dept. Stores v. Cohen, 295 N. Y. 557.) ” (Emphasis supplied.)
It appears that in 1932 Solomon M. Weingast, the president of the petitioner, and one Murray I. Mentzer, now deceased, formed a partnership under the firm name and style of Precision Apparatus Co., and duly filed the certificate of doing business required by law, and commenced manufacturing and selling various types of electronic equipment, including meters. That thereafter, on March 27,1946, the partnership was incorporated as Precision Apparatus Co., Inc. That since its inception, the ownership of said business has remained the same, except that upon the death of Mentzer, his widow and son acquired and continue to hold 50% of the corporation’s stock, the other 50% being retained by said Weingast, That thereafter peti *820 tioner caused to be formed Pace Electrical Instruments Co., Inc., a wholly owned subsidiary of the petitioner having the same offices, quarters and officers of petitioner, and being the meter division of petitioner.
It further appears that said subsidiary was originally named Electronic Holding Corporation, and that petitioner seeking a word that would more aptly associate and convey to those in the electronics field that the product manufactured was the product of the Precision Apparatus Company, Inc., coined the word “ Pace ” by utilizing the first letters of Precision Apparatus Go. in petitioner’s name and adding the letter “ e ” for “ enterprise ”, changed the name of Electronic Holding Corporation to Pace Electrical Instruments Co., Inc. This court finds that explanation for petitioner’s adoption of the word “ Pace ” satisfactory and convincing, especially so, in this day and age when considerable time, effort and expense are used in the quest for a coined word that can most suitably be identified with' the name of the manufacturer of the product advertised. It also appears from the affidavits petitioner has submitted and from the argument before the court, that those of the public in the electronics field knew and understood that “Pace” signified Precision Apparatus Company, Inc., and that the product advertised was the product of the Precision Apparatus Company, Inc.
The record here disclosed that from April 30, 1943 until November, 1954, petitioner occupied an entire building at 92-27 Horace Harding Boulevard, Elmhurst, Queens, New York, for the manufacture of electronic instruments, and thereafter moved to a building erected to its specifications at 70-31 — 84th Street, Glendale, Queens, New York, consisting of about 21,300 square feet and about 14,000 square feet of additional open space immediately adjacent to said building. That said building houses all of petitioner’s divisions, including the meter division.
It appears further, that since the commencement of business, petitioner has built up a substantial trade and valuable good will in the field of electronics and has spent thousands of dollars in advertising its products as well as its name, with the word Precision boldly and prominently displayed, so that the name Precision is known throughout the United States and in foreign countries as one of the leading manufacturers of electronic instruments, including meters; that since the inception of business petitioner has particularly adopted and used a format in the manner in which the word Precision is laid out as shown on all its brochures and advertisements, and the name Precision has become to be known throughout the trade as meaning *821 Precision Apparatus Company, Inc., and its products are recognized and well known by the general electronics trade as Precision (Apparatus Company, Inc.) products.
The record further discloses that on or about April 13, 1956, respondent, fully aware of the business conducted by petitioner and its subsidiary and of the foregoing facts, disregarding petitioner’s rights, willfully and deliberately caused a corporation to be formed under the name of Precision Meter Co., Inc., and thereafter during August or September, 1956, commenced doing business at 126 Greenpoint Avenue, Brooklyn, New York, in the same metropolitan area as petitioner and but a ten minute motor ride from petitioner’s plant.
It appears that the parties interested in the respondent as officers, stockholders and directors, are Harry Lederman, Charles Bernstein and Roman Sicho, and that Lederman and Bernstein were formerly interested in and employed by Electronic Instrument Company, a competitor of the petitioner, and that from time to time one Preston Mack of Kaelber & Mack, petitioner’s manufacturer’s representative, called on Lederman at Electronic Instrument Company and sold to that company the meter of Precision manufactured by Pace, its subsidiary, and left with Lederman petitioner’s brochures. It also appears that Roman Sicho, prior to becoming associated with respondent, and during 1955, went into partnership with one Max Liebler in the manufacture of meters. Max Liebler up to the time of his partnership with Sicho was manager of the meter division of petitioner, namely Pace. Thereafter the business venture of Sicho and Liebler was sold, and Sicho, armed with all the information concerning Precision operations, joined with Lederman and Bernstein in forming the respondent corporation for the purpose of capitalizing on the reputation and good will of the petitioner.
The record also discloses that petitioner on June 26, 1956 and again in August, 1956, wrote respondent and its three principals, Lederman, Bernstein and Sicho, advising them to discontinue the use of the name Precision in connection with the sale of competitive lines and particularly the sale of meters, and that the use of the name Precision by respondent would mislead the public into believing respondent and petitioner were one and the same; also that respondent’s principals were fully aware of petitioner’s business methods and advertising, and advising respondent that its use of the name Precision was illegal, unfair trade practice and tended to mislead the public. It appears that respondent disregarded said communications and has persisted in the use of the name Precision, contending *822 that it has the right to use the descriptive word Precision in its corporate name.
While “ Precision ” may be a term of widespread and common usage in the electronics field, its use as the distinguishing part of a firm name to identify that firm’s product is not an ordinary or common use, and when so used in extensive advertising of that firm’s product the word derives a secondary meaning in that it becomes associated with said firm’s product, not as descriptive of the quality of the product, but in such a way as to rather practically name the manufacturer thereof.
In Golenpaul v. Rosett (174 Misc. 114, 115), the court stated: “At the present time, however, the law of ‘ Unfair Competition ’ lays stress upon the element of unfairness rather than upon the element of competition and recognizes that where any name or mark or symbol, even though consisting of commonplace words of the English language, has come to signify in the public mind the product or business of a particular individual or group of individuals, such name or mark or symbol cannot be used by another individual or group of individuals in such way as to lead the public to believe that the product or business of the latter is the product or business of the former. Illustrations of that rule are numerous. (Philadelphia Storage Battery Co. v. Mindlin, 162 Misc. 52; Tiffany & Co. v. Tiffany Productions, Inc., 147 Id. 679; affd 237 App. Div. 801; affd 262 N. Y. 482; Forsythe Co., Inc., v. Forsythe Shoe Corp., 234 App. Div. 355; Vogue Co. v. Thompson-Hudson Co., 300 Fed. 509, 512; Yale Electric Corp. v. Robertson, 26 F. [2d] 972, 974; Patten v. Superior Talking Pictures, Inc., 8 F. Supp. 196.) ” (Emphasis supplied.)
The law in the Federal courts is analogous to that heretofore stated. In Selchow & Righter Co. v. Western Print. & Lithographing Co. (29 F. Supp. 569, affd. 112 F. 2d 430), the court at page 571 stated the law to be as follows: “A word may be purely generic or descriptive, and so not capable of becoming an arbitrary trade mark, and yet there may be an unfair use of such word or symbol which will constitute unfair competition.”
Where such secondary meaning has attached, the words may not be used by any competitor in the same geographical area. Here both petitioner and respondent are in the metropolitan area of the city of New York. (Wholesale Service Supply Corp. v. Wholesale Bldg. Materials Corp., 304 N. Y. 854; Matter of Playland, supra.)
Respondent’s advertisement, simulates the advertisements of petitioner shown in petitioner’s *823 Exhibits J-l to J-7 inclusive, as it relates to the format of the words “ Precision Meter Co.” exactly simulating the format used by the petitioner, so that those in the electronics business would be misled into believing that.Precision Apparatus Company, Inc. and Precision Meter Co., Inc., are one and the same or allied with each other. This also applies to the circular which respondent mailed to Coil Winders, Inc., which was handed up to the court on the argument of this motion. Petitioner’s Exhibit B also demonstrates to the satisfaction of this court that the meters made by Pace, the meter division and subsidiary of the petitioner, so advertised, are the products of Precision Apparatus Company, Inc.
Although the statute does not require proof that any person has in fact been deceived or misled, petitioner has nevertheless shown that one concern was so misled as to ship merchandise ordered and intended for respondent to the petitioner. This is some probative evidence that respondent’s use of the name Precision Meter Co., Inc., is misleading and deceiving to the electronic trade.
The prior connections and association of Lederman and Bernstein and Sicho, above mentioned, and the knowledge they had acquired of Precision meters thereby, as well as their knowledge of the manufacture of meters by Precision through its subsidiary Pace and the extensive advertising done by petitioner in prominently designating their meter product “Precision” with the coined word “Pace”, known to the trade to mean Precision Apparatus Company, Inc., make it convincing and clear to this court that the respondent appropriated the word Precision as part of its corporate name, with the deliberate intent to deceive and mislead the public and to capitalize upon the name, good will and extensive advertising of the petitioner herein.
The respondent has failed to establish any true issue of fact by the affidavits submitted here and the insubstantial and incredible averments set forth therein do not suffice to raise such an issue. The bellicose and dogmatical arguments in the affidavits of respondent, replete as they are with vituperative, spirited and sometimes transcendental characterizations of the motives and contentions of the petitioner, do not factually establish the premise the respondent has urged in its defense against the petition. A precis of the facts disclosed here inhibits any approval of the respondent’s contentions and epitomizing the evidence, the result is clear that deceit and illegal appropriation has been shown.
*824 With all the words in the dictionary from which to select, why did respondent seize upon and adopt and use the word Precision for the beginning of its corporate name? With the prior connections and knowledge its principals had acquired, as aforesaid, the court is clearly convinced that respondent adopted the word Precision for its corporate name with the intent to capitalize upon the valuable, expensive and extensive advertising Precision had done over the years in building up a reputation and good will among the electronic trade, and to deceive and mislead those in the electronics field. This conclusion is further fortified by respondent’s simulation of petitioner’s oblique line in the format of the advertising.
The disclosures here, unequivocally, convince the court that the use by respondent of the name Precision Meter Co., Inc., and its advertising the meter it manufactured under that name, using the oblique line used by petitioner in its advertising, were all done with the deliberate intention to deceive and mislead the public in the electronic field and that such conduct violated section 964 of the Penal Law.
Actual competition need not be shown; what matters is that the public may confuse the respondent’s product with those of the petitioner. (New York World’s Fair 1939 v. World’s Fair News, 163 Misc. 661.) The difference in size between respondent and petitioner is not ground for denying relief. (Atlas Corp. v. Atlas Investing Corp., 98 N. Y. S. 2d 60; Matter of Rayco Mfg. Co. v. Layco Auto Seat Cover Center, 205 Misc. 827, supra; Matter of Playland Holding Corp. v. Playland Center, 1 N. Y. 2d 300, supra.) The use of the name Precision by other business firms in other parts of the country cannot justify the wrongful use by respondent of that name. (1 Nims on Unfair Competition and Trade Marks [4th ed.], § 38; Smith Co. v. American Pharmaceutical Co., 270 N. Y. 184; Matter of Playland, supra.)
Without going into further minute details it is enough to say that this court is entirely satisfied that the respondent adopted the corporate name Precision Meter Co., Inc., and adopted the oblique line simulating petitioner’s advertising-format, for the purpose of indulging in unfair competition and with the design and intent to create and cause deception and confusion with the trade name of the petitioner and with intent to deceive and mislead the public in the electronics field.
The relief prayed for in the petition is granted.
Settle order.