The BADA COMPANY, a California corporation, Plaintiff-Appellant, Cross-Appellee,

v.

MONTGOMERY WARD & CO., Incorporated, an Illinois corporation, Defendant-Appellee, Cross-Appellant.

The BADA COMPANY, a California corporation, Plaintiff-Appellant, Cross-Appellee,

v.

FMC CORPORATION, a Delaware corporation; Weaver Manufacturing Co., a Division of Dura Corporation, a Michigan corporation; Big Four Industries, Incorporated, an Ohio corporation, Defendants-Appellees, Cross-Appellants.

Nos. 23436, 23433.

United States Court of Appeals, Ninth Circuit.

April 28, 1970.

Rehearing Denied in No. 23433 June 2, 1970.

C. Russell Hale (argued), of Christie, Parker & Hale, M. Roy Spielman, Pasadena, Cal., for appellant.

Lewis E. Lyon (argued), Charles G. Lyon, of Lyon & Lyon, Los Angeles, Cal., for appellee.

Before DUNIWAY, HUFSTEDLER and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Appellant is the owner of two patents relating to a system of balancing automobile wheels, and of the registered trademarks "Micro" and "Micro-Precision," applicable to wheel weights and balancers used in the patented system. This action is for infringement of both patents and trademarks, and for unfair competition. The District Court found that the patents were invalid for obviousness, 35 U.S.C. § 103, but that if valid they had been infringed. It held the trademarks valid and infringed, and awarded damages. Defendants' counterclaim, alleging patent and trademark misuse, was dismissed, and it has been abandoned in oral argument here.

I.

The record shows that plaintiff's predecessor in title was the inventor of a method for balancing automobile tires covered by patent No. 3,002,388. The patented system involves four steps. First, the wheel is placed horizontally on a balancer equipped with a spirit level and allowed to tilt freely from side to side. The bubble in the spirit level indicates the location of the "light spot" on the wheel—the point of greatest imbalance and the one which tips up the highest when the wheel tilts. Second, four equal weights are placed on the rim of the wheel, two on each side of the light spot and immediately adjacent to it. The weights are of a size such that when all four are placed at the light spot, they are

sufficient to correct the tilt of the wheel and just slightly to "overbalance" it. Third, the pairs of weights are moved away from the light spot equal distances along the rim, until the induced overbalance is precisely corrected and the angle of tilt, as shown by the spirit level, is zero. Fourth, one of the weights in each pair is fastened into position; the other is removed, and fastened into the corresponding position on the other (nether) side of the wheel.

The system is simple and easy to apply, and there is no dispute that its application solved what had been a problem in the industry—the development of a speedy method for wheel balancing that could be taught to relatively unskilled workers. Commercial success followed.

The District Court however found, and we agree, that each of the elements in the patented process was covered by the prior art. Thus the Booth patent, British No. 731,459, discloses a static balancer on which the wheel is placed horizontally and which utilizes a spirit level to indicate imbalance. The Booth patent, the Hume patent, No. 2,052,295, and the Morse patent, No. 2,136,633 all involve placing weights at the light spot and "fanning" them out until the wheel is precisely balanced. The Holl patent, No. 2,592,804, and the Lowe patent, No. 2,700,892, disclose the division of weights and the attachment of one in each pair to the opposite rim.

■ The patent in suit, then, is merely a combination of known prior art elements. We are enjoined to scrutinize such patents "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). To be sure, the combination here filled a long-felt need and enjoyed commercial success. But that is not enough to show patentability. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L. Ed.2d 258 (1969); Carborundum Co. v.

Wilbanks, 420 F.2d 43 (9th Cir., 1969). Nor is this a case where a joinder of known elements produced a wholly unanticipated result, cf. United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L. Ed.2d 572 (1966). On the contrary, the spirit level indicated the light spot, as it had before; moving the weights brought the wheel into static balance, as it had before; and transferring one weight to the other rim achieved dynamic balance, as it had before. "Two and two have been added together, and still they make only four." Great A. & P. Tea Co., supra, 340 U.S. at 152, 71 S.Ct. at 130.

Essentially the same is true of the device covered by appellant's patent No. 3,055,221, an improvement to the prior art pivot point wheel balancer. Pivot point wheel balancers are not different, in their essentials, from a teeter-totter of the old-fashioned type. The wheel to be balanced is placed on a support member, attached in its turn to a metal ball. When the balancer is in the "on" position, the ball pivots on a flat metal platform, tipping to one side or the other if the wheel is imbalanced. When the balancer is in the "off" position, ball and platform are disengaged.

This mechanism occasioned trouble if the operator carelessly loaded a wheel onto the balancer while the latter was in the "on" position. The sudden impact had a tendency to flatten the ball against the platform, impeding the free rotation of the ball and destroying the accuracy of the balance. The patented device consists of a spring and cam arrangement that automatically disengages ball and platform whenever a wheel is removed from the balancer. The effect is to prevent damage to the ball by making it impossible to leave the balancer accidentally in the "on" position.

It is conceded that the pivot point balancer was known to the prior art. We have examined the spring and cam arrangement added to the prior art balancer and we cannot escape the conclusion that it would have been obvious to one skilled in the art. The use of

springs and cams to return mechanical devices to their initial positions is old. And we cannot say that more than ordinary skill and ingenuity are shown by the mere fact that the patented device employed the weight of the wheel being balanced to prevent an untimely return to the "off" position, rather than the pressure of the operator's foot (as did the prior art Holl patent No. 2,592,804). When hoary devices like springs and cams are involved, it will be a rare case indeed when mere artful placement of them will be non-obvious. The improvement, we think, "is the work of the skilful mechanic, not that of the inventor." Hotchkiss v. M. Greenwood & Co., 52 U.S. (11 How.) 248, 267, 13 L.Ed. 683 (1851).

We affirm the District Court's conclusion that the patents were invalid.

## II.

As to the trademarks, the question is whether the court below erred in finding that they were not merely descriptive of the articles involved.

■ The law is that a word which is in its primary meaning merely descriptive of the goods to which it is applied may not be appropriated as the exclusive trademark of a single seller, since one competitor will not be permitted to impoverish the language of commerce by preventing his fellows from fairly describing their own goods. Lanham Act § 2(e), 15 U.S.C. § 1052(e); Delaware & H. Canal Co. v. Clark, 80 U.S. (13 Wall.) 311, 20 L.Ed. 581 (1871); Rohr Aircraft Corp. v. Rubber Teck, Inc., 266 F.2d 613, 623 (9th Cir. 1959); Telechron, Inc. v. Telicon Corp., 198 F.2d 903 (3d Cir. 1952).

■ If, however, a mark which is merely descriptive in its primary meaning acquires over time a secondary and distinctive meaning which serves to identify the goods of a single merchant, then the law will afford protection against unfair appropriation of the benefits resulting from the mark's secondary meaning. Lanham Act § 2(f), 15 U.S.C. § 1052(f); Armstrong Paint & Varnish

Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938); Safeway Stores v. Safeway Properties, 307 F.2d 495 (2d Cir. 1962); Wilhartz v. Turco Products, 164 F.2d 731 (7th Cir. 1947).

■ Applying these principles to the instant case, we have no difficulty concluding that the mark "Micro," as applied to wheel weights, is merely descriptive. Both in its advertising and in its brief here, plaintiff contends that its system allowed wheels to be balanced with weights of the smallest possible size. "Micro" appears in dictionaries and in common usage as a combining form meaning extremely small, or tiny. Plaintiff's mark, therefore, is exactly analogous to other marks relating to the size of goods which have been held merely descriptive. George Ziegler Co. v. Tom Huston Peanut Co., 37 C.C.P.A. 947, 181 F.2d 237 (1950); Little Tavern Shops v. Davis, 116 F.2d 903 (4th Cir. 1941); Keller, Inc. v. Chicago Pneumatic Tool Co., 298 F. 52 (7th Cir. 1923).

Equally descriptive is the mark "Micro-Precision," as applied to wheel balancers and weights. Certainly the element "Precision," as applied to a balancer or balancing weight, conveys merely that the system of balancing is accurate and precise; the term is descriptive, and it has been so held. Precision Apparatus Co. v. Precision Meter Co., 6 Misc.2d 817, 165 N.Y.S.2d 853 (1956).

■ The addition of the element "Micro" only strengthens the meaning, and denotes that the system is more than ordinarily accurate and precise. It is true that "micro" in this sense appears in no dictionary, and were we grammarians we should perhaps flinch at its use. Be that as it may, we are required to consider standards of meaning not our own, but prevalent among prospective purchasers of the article. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 699 (2d Cir. 1961). And, however barbarous the use, we have no doubt that in the jargon of the trade "micro"

functions as little more than an inexact intensified for "precision."

We think, therefore, that the District Court erred in holding the plaintiff's trademarks non-descriptive. Since no showing as to secondary meaning has been made, the judgment as to the validity of the trademarks must be reversed.

Affirmed in part, reversed in part.